**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*                                                    Case No.: 19-25286-RAM

CHILDREN FIRST CONSULTANTS,                Chapter 11
INC.,

_____Debtor._____ /

**DISCLOSURE STATEMENT IN SUPPORT OF THE**

**PLAN OF REORGANIZATION OF**

**CHILDREN FIRST CONSULTANTS, INC.**

**IMPORTANT**: **THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED CHAPTER 11 PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.**

**Submitted on September 8, 2020 by:**

**AGENTIS PLLC**
**55 Alhambra Plaza, Suite 800**
**Coral Gables, Florida  33134**
**T. 305.722.2002      F. 305.722.2001**
**Nicole Grimal Helmstetter**
**Fla. Bar No. 86937**
**ngh@agentislaw.com**
*Attorneys for the Debtor in Possession*

# TABLE OF CONTENTS

**ARTICLE I.**    **DEFINITIONS** ........................................................................................... **1**

1.1.    **Administrative Claim** ............................................................................ **1**

1.2.    **Administrative Claims Bar Date** ......................................................... **1**

1.3.    **Administrative Expenses** ...................................................................... **1**

1.4.    **Adversary Proceeding** .......................................................................... **2**

1.5.    **AHCA** ...................................................................................................... **2**

1.6.    **Allow, Allowed, Allowance** ................................................................. **2**

1.7.    **Allowed Administrative Expense Claim** ............................................. **2**

1.8.    **Allowed Claim** ....................................................................................... **2**

1.9.    **Allowed Unsecured Claim** .................................................................... **3**

1.10.    **Assets** ...................................................................................................... **3**

1.11.    **Avoidance Action** .................................................................................. **3**

1.12.    **Ballot** ...................................................................................................... **3**

1.13.    **Bankruptcy Code** .................................................................................. **3**

1.14.    **Bankruptcy Court** ................................................................................. **3**

1.15.    **Bankruptcy Rules** ................................................................................. **4**

1.16.    **Cause(s) of Action** ................................................................................ **4**

1.17.    **Chapter 11 Case** .................................................................................... **4**

1.18.    **Claim** ...................................................................................................... **4**

1.19.    **Claimant, Claimholder or Creditor** ................................................... **4**

1.20.    **Claimholder** ........................................................................................... **4**

1.21.    **Claims Bar Date** .................................................................................... **4**

1.22.    **Class** ....................................................................................................... **4**

1.23.    **Confirmation or Confirmation Date** .................................................. **4**

1.24.    **Confirmation Hearing** .......................................................................... **5**

1.25.    **Confirmation Order** .............................................................................. **5**

1.26.    **Court** ...................................................................................................... **5**

1.27.    **Cramdown Provisions** .......................................................................... **5**

1.28.    **Creditor** .................................................................................................. **5**

1.29.    **Debtor** ..................................................................................................... **5**

1.30.    **Directors** ................................................................................................ **5**

1.31.    **Disclosure Statement** ............................................................................ **5**

1.32.    **Disputed Claim** ...................................................................................... **6**

1.33.    **Disputed Creditors** ............................................................................... **6**

1.34.    **Earn Out From Operations** ................................................................. **6**

1.35.    **Effective Date** ........................................................................................ **6**

1.36.    **Estate** ...................................................................................................... **6**

**a**gentis
Legal Advocates & Advisors

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

1.37.    Equity Interest ................................................................................... 6
1.38.    Executory Contracts .......................................................................... 6
1.39.    Final Order ......................................................................................... 6
1.40.    General Unsecured Claim .................................................................. 7
1.41.    Governmental Unit ............................................................................ 7
1.42.    Holder ................................................................................................. 7
1.43.    Impaired ............................................................................................. 7
1.44.    Insiders ............................................................................................... 7
1.45.    Litigation Proceeds ........................................................................... 7
1.46.    Local Rules ......................................................................................... 7
1.47.    Monthly Operating Reports ............................................................. 8
1.48.    Petition Date ...................................................................................... 8
1.49.    Plan ..................................................................................................... 8
1.50.    Plan Fund ........................................................................................... 8
1.51.    Plan Payment ..................................................................................... 8
1.52.    Priority Cap ....................................................................................... 8
1.53.    Priority Claim .................................................................................... 8
1.54.    Professional ........................................................................................ 8
1.55.    Professional Claim ............................................................................ 8
1.56.    Proponent ........................................................................................... 9
1.57.    Reorganized Debtor .......................................................................... 9
1.58.    Scheduled ........................................................................................... 9
1.59.    Schedules or Amended Schedules or Schedules of Assets
         and Liabilities or Statement of Financial Affairs ........................... 9
1.60.    Solicitation Procedures Order ......................................................... 9
1.61.    United States Trustee ....................................................................... 9
1.62.    United States Trustee Fees ............................................................... 9
1.63.    Voting Deadline ................................................................................. 9
1.64.    Uncontested Receivable .................................................................. 10
1.65.    WellCare ........................................................................................... 10
1.66.    Undefined Terms ............................................................................. 10

ARTICLE II.     INTRODUCTION .............................................................. 10
         A.     Purpose of this Document ............................................... 11

ARTICLE III.    OVERVIEW OF CHAPTER 11 ........................................ 12
         A.     Brief Explanation of Chapter 11 .................................... 12
         B.     Voting on the Plan ............................................................ 12
         C.     The Confirmation Hearing ............................................. 14
         D.     Confirmation ..................................................................... 14

iii

**ARTICLE IV.**   **THE DEBTOR'S BUSINESS AND THE BANKRUPTCY CASE** .......... 15
    **A.**   **The Business of Children's First** ...................................................... 15
    **B.**   **Business Factors Necessitating the Bankruptcy Case** ................................ 16
    **C.**   **Prepetition Priority and Unsecured Claims** ........................................ 17
    **D.**   **Significant Events in the Bankruptcy Including First Day Motions** ........ 18
    **E.**   **Claims** ................................................................................................... 19
        **1.**   **Bar Date for Filing Proofs of Claims and Administrative Expenses** ....... 19
        **2.**   **Claims Objections Generally** ...................................................... 19

**ARTICLE V.**   **DEADLINES FOR VOTING AND OBJECTING** ...................................... 19
    **A.**   **Final Hearing to Approve the Disclosure Statement and Plan** ................ 20
    **B.**   **Deadline for Voting to Accept or Reject the Plan** ................................ 20
    **C.**   **Deadline for Objecting to the Adequacy of Disclosure**
       **and Confirmation of the Plan** ...................................................... 22
    **D.**   **Sources of Information** ...................................................................... 22
    **E.**   **Disclaimer** ...................................................................................... 23

**ARTICLE VI.**   **SUMMARY OF THE PLAN AND DISTRIBUTION SCHEME** .............. 24
    **A.**   **SOURCES OF PLAN FUNDING** ...................................................... 24
        **1.**   **The Plan Fund** ...................................................................... 24
        **2.**   **Sources of Funding Plan Payments** ...................................... 25
    **B.**   **CLASSIFICATION OF CLAIMS AND INTERESTS** ........................... 26
        **1.**   **Manner of Classification of Claims and Interests and Unclassified**
        **Claims** ...................................................................................... 26
            **a.**   **Administrative Expense Claims** ...................................... 26
            **b.**   **Administrative Bar Date** .............................................. 27
            **c.**   **Professional Fee Claims** ................................................ 27
            **d.**   **United States Trustee Fees** ............................................ 28
        **2.**   **Classified Claims** .................................................................. 28
            **a.**   **Class 1.  Allowed Wage Claims** .................................... 28
            **b.**   **Class 2. Allowed General Unsecured Claims** ................. 28
            **c.**   **Class 3. Equity Interests of the Directors** ...................... 29
            **d.**   **Impaired Classes** .......................................................... 29

**ARTICLE VII.**   **PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER**
    **THE PLAN** ...................................................................................... 29
    **A.**   **Ballots and Voting Deadline** .......................................................... 29
    **B.**   **Claimholders Entitled to Vote** ........................................................ 29
    **C.**   **Bar Date for Filing Proofs Claim** .................................................... 31
    **D.**   **Definition of Impairment** .............................................................. 31
    **E.**   **Disallowed Claims** ........................................................................ 32

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

|  | F. | Acceptance by Class of Claimholders | 32 |
|  | G. | Cramdown | 32 |
|  | H. | Classes Impaired Under the Plan | 33 |
|  | I. | Vote Required for Class Acceptance | 33 |
|  |  | 1. Transmission of Ballots to Claimholders | 34 |
|  |  | 2. Ballot Tabulation Procedures | 34 |

**ARTICLE VIII.** CONFIRMATION OF PLAN ... 37
| A. | Solicitation of Acceptances | 37 |
| B. | Requirements for Confirmation of the Plan | 38 |
| C. | Acceptances Necessary to Confirm the Plan | 40 |
| D. | Cramdown | 40 |
| E. | Execution of Ballots by Representatives | 42 |
| F. | Waivers of Defects and Other Irregularities Regarding Ballots | 43 |
| G. | Withdrawal of Ballots and Revocation | 43 |

**ARTICLE IX.** EFFECTS OF CONFIRMATION OF PLAN AND DISCHARGE ... 45
| A. | Discharge of Debt | 45 |
| B. | Releases | 45 |
| C. | Injunction | 45 |
| D. | Rejection and Assumption of Certain Executory Contracts and Unexpired Leases. | 45 |
| E. | Management of Reorganized Debtor | 53 |

**ARTICLE X.** POSSIBLE CAUSES OF ACTION AFTER CONFIRMATION ... 53

**ARTICLE XI.** TAX IMPLICATIONS OF THE PLAN ... 54

**ARTICLE XII.** LIQUIDATION ANALYSIS ... 55

**ARTICLE XIII.** MISCELLANEOUS ... 56
| A. | Modification | 56 |
| B. | Confirmation Order Controls | 57 |
| C. | Effectuating Documents and Further Transactions | 57 |
| D. | Substantial Consummation of the Plan | 57 |
| E. | Terms of the Plan are Binding | 58 |
| F. | Taxes | 58 |

**ARTICLE XIV.** RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT 58

**ARTICLE XV.** RECOMMENDATION OF CONFIRMATION ... 60

v

## <u>LIST OF EXHIBITS</u>

**Exhibit "A"** –Chapter 11 Plan

**Exhibit "B"** - Claims Register

**Exhibit "C" -** Debtor's Schedule B

**Exhibit "D" -** Debtor's July 2020 Monthly Operating Report

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

# ARTICLE I.
## DEFINITIONS

Except as otherwise provided in this Plan, all terms used herein shall have the meanings ascribed to such terms under the Bankruptcy Code, as amended, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of Florida (the "**Local Rules**").  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan.   The capitalized terms set forth below when used in this Disclosure Statement and Plan of Reorganization shall have the following meanings:

1.1.    "**Administrative Claim**" shall mean a Claim for payment of costs or expenses of administration specified in Sections 503(b) and 507(a)(1) of the Bankruptcy Code, incurred after the Petition Date through the Confirmation Date, including without limitation: (i) the actual, necessary costs and expenses of preserving the Debtor's Estate incurred after the Petition Date; (ii) compensation for legal, accounting and other services and reimbursement of expenses awarded pursuant to Sections 330(a) or 331 of the Bankruptcy Code; and, (iii) all fees and charges assessed against the Debtor's Estate pursuant to Section 1930 of Title 28 of the United States Code.

1.2.    "**Administrative Claims Bar Date**" shall mean the date which occurs thirty (30) days from the Confirmation Date as the last date to request payment of Administrative Claims, other than with respect to Professional Claims.

1.3.    "**Administrative Expenses**" shall mean any Claim for payment of costs or expenses of administration specified in Sections 503(b) and 507(a)(1) of the Bankruptcy Code, incurred after the Petition Date through the Confirmation Date, including without limitation: (i)

1



the actual, necessary costs and expenses of preserving the Debtor's Estate incurred after the Petition Date; (ii) Professional Claims; and (iii) all fees and charges assessed against the Debtor's Estate pursuant to Section 1930 of Title 28 of the United States Code.

1.4.    **"Adversary Proceeding"** shall mean the adversary proceeding commenced on June 2, 2020, by the Debtor upon the filing of a three count complaint against the Florida Agency for Health Care Administration wherein the Debtor requested turnover of $831,128.28 of uncontested receivables as property of the Estate.

1.5.    **"AHCA"** shall mean the State of Florida's Agency for Healthcare Administration.

1.6.    **"Allow," "Allowed," "Allowance"** or words of similar meaning shall mean with respect to a Claim against the Debtor's Estate:  (i) that no objection has been interposed within the applicable period of limitation fixed by this Plan or by the Bankruptcy Court and that such period of limitation has expired; or (ii) that the Claim has been allowed for purposes of payment by an order of the Bankruptcy Court that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending.

1.7.    **"Allowed Administrative Expense Claim"** shall mean an Allowed Claim for which a Claimant asserts, and that is determined to be entitled to, priority under Sections 503 and 507(a)(1) and (a)(2) of the Bankruptcy Code, other than Administrative Claims.

1.8.    **"Allowed Claim"** shall mean a Claim against the Debtor (i) allowed by a Final Order, (ii) Scheduled as liquidated, undisputed and non-contingent by the Debtor in their Schedules of Assets and Liabilities filed with the Bankruptcy Court, as they may be amended or supplemented) or (iii) timely filed with the Clerk of the Bankruptcy Court and to which no

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

objection has been made to the allowance thereof within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim.

**1.9.** "**Allowed Unsecured Claim**" shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court.

**1.10.** "**Assets**" shall mean the aggregate assets, of any kind, of the Debtor and its Estate as more specifically defined in section 541 of the Bankruptcy Code.

**1.11.** "**Avoidance Action**" shall mean potentially avoidable transfers pursuant to 11 U.S.C. §§ 544, 547, 548, and 549.

**1.12.** "**Ballot**" shall mean the Ballot accompanying this Plan or Order Approving the Disclosure Statement, upon which holders of Impaired Claims entitled to vote on this Plan shall indicate their acceptance or rejection of his Plan in accordance with the instructions regarding voting.

**1.13.** "**Bankruptcy Code**" (the "**Code**") shall mean Title 11 of the United States Code, which governs the Chapter 11 Case of the Debtor.

**1.14.** "**Bankruptcy Court**" (the "**Court**") shall mean the United States Bankruptcy Court for the Southern District of Florida, Miami Division, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding arising in or related to the Chapter 11 Case.

3



**1.15.** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida), as now in effect or hereafter amended.

**1.16.** **"Cause(s) of Action"** shall mean any and all causes of action to recover funds for the benefit of the Estate.

**1.17.** **"Chapter 11 Case"** or this "**Case**" shall mean the proceeding under Chapter 11 of the Bankruptcy Code under case number 19-25286-BKC-RAM.

**1.18.** **"Claim"** shall have the meaning provided for such term in Section 101(5) of the Bankruptcy Code.

**1.19.** **"Claimant," "Claimholder" or "Creditor"** shall mean the holder of a Disputed Claim or Allowed Claim, as the case may be.

**1.20.** **"Claimholder"** shall mean a creditor of the Estate whose Claim is not a Disputed Claim and who is entitled to vote on the Plan.

**1.21.** **"Claims Bar Date"** shall mean March 16, 2020, which is the date set by the Bankruptcy Court as the last day for filing a proof of Claim for all creditors except a governmental unit against the Debtor.

**1.22.** **"Class"** shall mean a group of Claims or Interests consisting of Claims or Interests which are substantially similar to each other as classified pursuant to the Plan in accordance with Section 1122 of the Bankruptcy Code.

**1.23.** **"Confirmation" or "Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

**1.24.** **"Confirmation Hearing"** shall mean the hearing conducted by the Bankruptcy Court under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

**1.25.** **"Confirmation Order"** shall mean the Final Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.26.** **"Court"** shall mean the United States Bankruptcy Court Southern District of Florida, Miami Division.

**1.27.** **"Cramdown Provisions"** shall mean in the event that any Impaired Class of Claimholders with Claims against the Debtor fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code.

**1.28.** **"Creditor"** shall mean any person or entity that is a holder of a Claim against the Debtor.

**1.29.** **"Debtor"** shall mean CHILDREN FIRST CONSULTANTS, INC..

**1.30.** **"Directors"** shall mean (i) Sofia Aneas, LMHC, BCBA; (ii) Oxana Garkavchenko, LMHC, BCBA and (iii) Yudelkys San Juan Machin, BCBA each owning a 33.3% equity interest in the Debtor.

**1.31.** **"Disclosure Statement"** shall mean the Disclosure Statement for the Plan of Reorganization proposed by Debtor pursuant to Section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified or supplemented from time to time (and all exhibits and schedules attached thereto or referred to therein).

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

**1.32.** **"Disputed Claim"** shall mean: (i) a liability scheduled on the Schedules or the Amended Schedules as disputed, contingent or unliquidated; or, (ii) a timely filed proof of Claim against which an objection is pending, or is filed within the deadline provided in this Plan and which Claim has not been Allowed by order of the Bankruptcy Court.

**1.33.** **"Disputed Creditors"** shall refer to those Creditors with disputed Claims that have been so designated on Schedule F.

**1.34.** **"Earn Out From Operations"** shall mean the net disposable income of the Debtor for the full fiscal year following them first distribution under the Plan after payment of all ordinary course of business expenses and the establishment of a reserve for three months of operations.

**1.35.** **"Effective Date"** shall mean the date on which distributions to Creditors shall commence after the entry of the Confirmation Order. The Effective Date in this case shall take place thirty (30) days after the entry of the Confirmation Order.

**1.36.** **"Estate"** shall mean the estate created by Section 541 of the Bankruptcy Code upon the Debtor's filing of the Petition with the Bankruptcy Court in this Proceeding.

**1.37.** **"Equity Interest"** shall mean a share of stock, warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest in the Debtor, as more specifically defined in Section 101(16) of the Bankruptcy Code.

**1.38.** **"Executory Contracts"** shall mean all contracts, oral or written, to which the Debtor is a party and which are executory within the meaning of Section 365 of the Bankruptcy Code.

**1.39.** **"Final Order"** shall mean an order or judgment of the Bankruptcy Court that is appealable of right to the United States District Court for the Southern District of Florida

6



pursuant to Section 158(a) of Title 28, United States Code, whether or not an appeal can be timely taken, is taken, or is pending, unless the order is stayed pending appeal, and whether or not a timely motion is filed under Bankruptcy Rules 7052(b) or 9023.

1.40. **"General Unsecured Claim"** shall mean any Claim against the Estate of the Debtor other than an Administrative Claim, an Administrative Tax Claim, a Secured Claim, a Priority Claim, or a Priority Tax Claim.

1.41. **"Governmental Unit"** shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

1.42. **"Holder"** shall mean a creditor of the Estate whose Claim is not a Disputed Claim and who is entitled to vote on the Plan.

1.43. **"Impaired"** shall mean that the Holder of such Allowed Claim will not receive a one hundred (100%) percent distribution on account of such Claim.

1.44. **"Insiders"** shall have the meaning given such term in Section 101(31)(B) of the Bankruptcy Code: (i) a director of the debtor; (ii) an officer of the debtor; (iii) a person in control of the debtor; (iv) a partnership in which the debtor is a general partner; (v) a general partner of the debtor; or (vi) a relative of a general partner, director, officer, or person in control of the debtor.

1.45. **"Litigation Proceeds"** shall mean the expected proceeds of the litigation to recover accounts receivable which are expected to arrive in two segments; first from the payment of Claims by AHCA and second, from Wellcare.

1.46. **"Local Rules" "** shall mean the Local Bankruptcy Rules for the Southern District of Florida.

7

1.47. **"Monthly Operating Reports" "** shall mean the small business debtor monthly operating reports filed by the Debtor in the Chapter 11 Case.

1.48. **"Petition Date"** shall mean the date that the voluntary petition was filed in this Case, which date was November 13, 2019.

1.49. **"Plan"** shall mean Debtor's Plan of Reorganization in its entirety, together with all addenda, exhibits, schedules and other attachments thereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.50. **"Plan Fund"** shall mean such sums available for payment of Allowed Claims under the Plan.

1.51. **"Plan Payment"** shall mean disbursements contemplated in the Plan.

1.52. **"Priority Cap"** shall mean the maximum priority wage amount described in Section 507(4) of $13,650.00.

1.53. **"Priority Claim"** shall mean a Claim entitled to priority under Section 507(a)(9) of the Bankruptcy Code.

1.54. **"Professional"** shall mean a person or entity (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Section 327, 328, or 1103 or otherwise of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.55. **"Professional Claim"** shall mean the Claim of any legal counsel, accountant, consultant, financial advisor, or other Professional entitled to such Claim pursuant to Sections

8

327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered before the Effective Date.

**1.56.** **"Proponent"** shall mean the Debtor.

**1.57.** **"Reorganized Debtor"** shall mean the Debtor in its restructured and reorganized form as of the entry of the Confirmation Order.

**1.58.** **"Scheduled"** shall mean as set forth in the Debtor's Schedules of Assets and Liabilities.

**1.59.** **"Schedules"** or **"Amended Schedules"** or **"Schedules of Assets and Liabilities"** or **"Statement of Financial Affairs"** shall mean the Schedules and any Amended Schedules filed or which may be filed by the Debtor in this Chapter 11 Case.

**1.60.** **"Solicitation Procedures Order" "** shall mean the order which sets forth the solicitation procedures in this Chapter 11.

**1.61.** **"United States Trustee"** shall mean the Assistant United States Trustee for the Southern District of Florida.

**1.62.** **"United States Trustee Fees"** shall mean the quarterly fee payments due under 28 U.S.C. § 1930(a)(6), to be paid to the United States Trustee System Fund at Treasury in each case under chapter 11 (except small business cases under Subchapter V of chapter 11) for each calendar quarter, or portion thereof, between the date a bankruptcy petition is filed and the date the court enters a final decree closing the case, dismisses the case, or converts the case to another chapter in bankruptcy.

**1.63.** **"Voting Deadline"** shall mean _____, 2020 5:00 p.m. Eastern Daylight Time.

**agentis**
Legal Advocates & Advisors

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

**1.64.** **"Uncontested Receivable"** shall mean $831,128.28 of uncontested receivables owed by AHCA, which are the subject of the Adversary Proceeding.

**1.65.** **"WellCare"** shall mean Wellcare Health Plans, Inc.

**1.66.** **"Undefined Terms"** shall mean that a term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein.

## ARTICLE II.
## INTRODUCTION

This is the disclosure statement (the "**Disclosure Statement**"), which describes the plan of reorganization (the "**Plan**") in the small business Chapter 11 case of CHILDREN FIRST CONSULTANTS, INC. (the "**Debtor**" or "**Children First**").  This Disclosure Statement and the Plan are propounded pursuant to sections 1125 and 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"), and submitted to all known Creditors and holders of Claims and Interests against Debtor for the purpose of disclosing the information that is material and necessary for Claimants to make an informed decision in exercising their right to vote on and understand the distribution scheme and proposed reorganization of the Debtor pursuant to the Plan.  A copy of the Plan is attached as **"Exhibit A"** to this Disclosure Statement. Reorganization pursuant to Chapter 11 of the Bankruptcy Code depends upon the receipt of a sufficient number of votes in favor of reorganization. Your vote, therefore, is important.  *Your rights may be affected by the treatment of your Claim or interest under the Plan.  Therefore, you should read this Disclosure Statement and the Plan carefully, and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.*

You are urged to study the Plan in full and to consult with your counsel about the Plan and its effect, including possible tax consequences, upon your legal rights.  Please read this

10

Disclosure Statement carefully before voting on the Plan. ***CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, OR OTHER ADVISORS.***

The financial information contained herein is not covered by a certified audit of independent public accountants. For this reason, the Debtor is unable to represent that the information contained in this Disclosure Statement is without inaccuracy, although every effort has been made to present the information fairly and accurately. Additional information can be found in the Debtor's Statement of Financial Affairs, Schedules of Assets and Liabilities, and Monthly Operating Reports, all of which have been filed with the United States Bankruptcy Court for the Southern District of Florida.

Except as otherwise expressly indicated herein, the portions of this Disclosure Statement describing the Debtor, its business, and the Plan have been prepared from information furnished by Debtor's management. This Disclosure Statement uses defined terms in capital letters. For the definitions of capitalized terms (not otherwise defined herein), see Article 1 in the Plan.

The proposed distributions under the Plan are discussed at Article V of this Disclosure Statement. Class 1 Allowed Wage Claims are expected to receive a pro rata distribution in an amount of up to 100% of the Priority Cap (defined below). Allowed General Unsecured Claims, including Allowed Wage Claims above the Priority Cap, are classified in Class 2 and are expected to receive a distribution on account of their allowed Claims.

**A.**      **Purpose of this Document**

This Disclosure Statement describes:

    1.  A brief explanation of Chapter 11 and the confirmation process,



2. The business of Debtor and significant events during the bankruptcy case,

3. How the Plan proposes to treat Claims or equity interests of the type you hold (*i.e.*, what you will receive on your Claim or equity interests if the Plan is confirmed),

4. Who can vote on or object to the Plan,

5. What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan,

6. Why the Debtor believes the Plan is feasible, and how the treatment of your Claim or equity interest under the Plan compares to what you would receive on your Claim or equity interest in liquidation, and

7. The effect of confirmation on the Plan.

## ARTICLE III.
## OVERVIEW OF CHAPTER 11

### A.     *Brief Explanation of Chapter 11*

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to Chapter 11, a Debtor is authorized to reorganize or liquidate its business for its benefit and for the benefit of Creditors and Interest-holders. Upon the filing of a petition under Chapter 11 actions by Creditors and Claimants attempting to collect on pre-petition Claims or to foreclose upon any of the Debtor's property are automatically stayed during the pendency of the Chapter 11 case.

In this case, the Debtor, a small business, has continued in possession of its property. Accordingly, pursuant to Section 1107(a) of the Bankruptcy Code, the Debtor is vested with substantially the same powers as a trustee under the Bankruptcy Code.

### B.     *Voting on the Plan*

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization proceeding.  However, liquidation of a Debtor's assets is also permitted under

12

Chapter 11.  The Plan is the vehicle through which Claims of the Debtor's Creditors are satisfied.  Each Creditor entitled to vote on the Plan may cast its vote for or against the Plan by completing, dating, and signing the Ballot Form, which shall accompany the Plan.  The Bankruptcy Court will, by separate Order, order that Ballots and Objections to Confirmation of the Plan, must be received at the offices of Debtor's counsel, Nicole Grimal Helmstetter, Esq., Agentis PLLC, 55 Alhambra Plaza, Suite 800, Coral Gables, Florida  33134 and the Office of the United States Trustee, 51 SW 1st Avenue, Room 1204, Miami, Florida 33130, no later than 5:00 p.m. on the date set forth in the Ballot and Order that shall accompany this Disclosure Statement or be provided by separate mailing.

This Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept the Plan.  **UNDER THE BANKRUPTCY CODE, YOUR VOTE FOR ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNLESS YOU RECEIVE A COPY OF THIS DISCLOSURE STATEMENT PRIOR TO OR CONTEMPORANEOUS WITH SUCH SOLICITATION.  THE SOLICITATION OF VOTES ON THE PLAN IS GOVERNED BY THE PROVISIONS OF SECTION 1125(b) OF THE BANKRUPTCY CODE, THE VIOLATION OF WHICH MAY RESULT IN SANCTIONS BY THE COURT, INCLUDING DISALLOWANCE OF THE SOLICITED VOTE, AND LOSS OF THE "SAFE HARBOR" PROVISIONS OF SECTION 1125(e) OF THE BANKRUPTCY CODE.**

Only the votes of Creditors in the Classes that are Impaired by the Plan will be counted to determine if the Plan is accepted by Creditors.  In this case, only Classes 1 and 2, are Impaired and entitled to vote.  Therefore, only Classes 1 and 2 will have their votes counted. Votes on the Plan will only be counted for those Claims for which a proof of Claim was filed

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

before the Claims Bar Date, if any, providing such Claim has not been disallowed, objected to, or suspended prior to the computation of the vote.  **The Ballot Form does not constitute a proof of Claim**.

### C.    *The Confirmation Hearing*

The Bankruptcy Court will schedule a hearing on the Confirmation of the Plan to determine if the Plan has been accepted by the requisite number of Creditors and whether the other requirements necessary to Confirmation have been satisfied.  The date on which the Confirmation Hearing will be conducted will be set forth in the Bankruptcy Court's Order setting the hearing on Confirmation of the Plan, which will be provided either with the Plan or in a separate mailing.

### D.    *Confirmation*

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the Plan has been accepted by each Impaired Class of Creditors. Under Section 1126 of the Bankruptcy Code, an Impaired Class is deemed to have accepted the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims in such Class voting to accept or reject the Plan have voted in favor of acceptance.

There are two methods by which the Plan can be confirmed: (i) the "acceptance" method in which all Impaired Classes have voted to accept the Plan as described above; and (ii) the "cram-down" method, in which the Plan is not accepted by one or more of the Impaired Classes, provided the Bankruptcy Court finds that the Plan does not discriminate unfairly and is fair and equitable to such Class or Classes. For a Plan to be confirmed under the "non-acceptance" method, it must be accepted by at least one Class of Claims or Interests that is

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

Impaired by the Plan.  The Debtor may choose to rely upon the "non-acceptance" method to seek Confirmation of the Plan, if it is not accepted by all Impaired Classes of Creditors.

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm the Plan notwithstanding its rejection by one or more Impaired Class if the Bankruptcy Court finds that the Plan is fair and equitable with respect to each Impaired Class that does not accept the Plan. With respect to Classes of Secured Creditors, the fair and equitable test requires that a Secured Creditor (i) retain its lien or liens and receive cash payments having a present value equal to its Allowed Secured Claim; (ii) receive the proceeds from the sale of its collateral, or (iii) realize the indubitable equivalent of its Claim.  With respect to a Class of Unsecured Claims, the fair and equitable test requires that if each Claimant in such Class does not receive property having a present value equal to the amount of such Claimant's Allowed Claim, no junior class can receive any property on account of such junior Claim or Interest.  If the Bankruptcy Court orders Confirmation of the Plan, then pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor is discharged from all pre-Confirmation debts except as is provided in the Plan.  Confirmation makes the Plan binding on the Debtor, all Creditors, Interest Holders, and other parties in interest regardless of whether they voted to accept or reject the Plan.

### ARTICLE IV.
### THE DEBTOR'S BUSINESS AND THE BANKRUPTCY CASE

A.    *The Business of Children's First*

Children First Consultants, Inc. is a corporation formed under the laws of the State of Florida in March 2017.  The Debtor provides behavioral analysis services to children with developmental disabilities, including but not limited to; autism, down syndrome, attention

15

deficit hyperactivity disorder (ADHD), depression, anxiety and other conduct and behavioral issues. The Debtor engages licensed therapists on a contract basis to manage its clients' care. The vast majority of Children First's clientele consists of Medicaid recipients. Children First is owned and operated by three Directors; (i) Sofia Aneas, LMHC, BCBA; (ii) Oxana Garkavchenko, LMHC, BCBA and (iii) Yudelkys San Juan Machin, BCBA, each owning a 33.3% equity interest. Sofia Aneas is a Director and the president of the Debtor.  Other than the three Directors, there are currently no other employees.

### B.    *Business Factors Necessitating the Bankruptcy Case*

Despite having been subjected to three prior audits with no adverse findings or recommendations, Children First was placed on a prepayment review audit from May through August 2019 by the Agency for Healthcare Administration ("**AHCA**").    Approximately $770,094.51 of the Debtor's pending Medicaid claims were subsequently denied for reasons inconsistent with AHCA's own rules and guidelines. At AHCA's direction, the Debtor continued operations while on pre-payment review and submitted new claims to Medicaid for a period of four months. A total of $831,128.28 in claims remain outstanding, billed from May 2019 through September 2019 (the "**Uncontested Receivable**"). The Debtor has not received a response from AHCA as to when payment on the Uncontested Receivable would be made. On September 12, 2019, AHCA advised the Debtor that it had terminated the prepayment review of the denied claims and was imposing a Medicaid payment suspension. AHCA also ordered the Debtor to wind down its business by November 15, 2019 and canceled its Medicaid provider number. Subsequently, the Debtor was advised by WellCare Health Plans, Inc. ("**Wellcare**"), that in light of its payment suspension with AHCA, the Debtor was no longer eligible to work with Wellcare either. Wellcare owes the Debtor $22,259.00 in unpaid claims.

16

As of April 2019, the Directors did not collect payroll, giving raise to the Directors' respective wage claims.  The Directors additionally provided capital in the form of $36,836.00[1] giving rise to the shareholder loans. The Debtor was unable to pay its contracted therapists without collecting on these past due Medicaid receivables. Without therapists and Medicaid, the Debtor was hindered from continuing its treatment of children with disabilities. This Chapter 11 case was commenced on the Petition Date.

Thereafter, on June 2, 2020, the Debtor commenced a three count Adversary Proceeding[2] against the Florida Agency for Health Care Administration wherein the Debtor requested turnover of the Uncontested Receivable as property of the Estate.

On July 6, 2020, AHCA filed a *Motion to Dismiss Adversary Complaint* [ECF# 7 in the Adversary Proceeding], which was granted on August 26, 2020 [ECF# 16 in the Adversary Proceeding], in light of the Court's finding of lack of subject matter jurisdiction. Accordingly, the Debtor will be pursuing its remedies to recover the Uncontested Receivable in State Court.

C.    *Prepetition Priority and Unsecured Claims*

According to the Claims Register and the Debtor's bankruptcy schedules, One Million Six Twenty-Eight Thousand Five Hundred Eighty-Seven Dollars and 81/100 ($1,628,587.81) in general unsecured Claims have been filed or asserted in the Case.  The Debtor anticipates that approximately $922,151.10 in unsecured (non-affiliate) Claims will be allowed in this case, after resolution of Claims objections.  A copy of the Claims Register is attached hereto as "**Exhibit B**".  In addition, the Debtor scheduled numerous Claimholders in its Schedules.  To the extent that a creditor filed a proof of Claim that was also scheduled by the Debtor, the filed

---

[1]  Each Director contributed $12,278.66.
[2]  The complaint included a count for (i) turnover; (ii) breach of contract; (ii) unjust enrichment; and (iv) declaratory judgment.

17



proof of Claim would supersede the scheduled Claim, subject to alternative resolutions obtained in the Claims objection process.  The Debtor does not waive any objections to or concedes that any of these Claims are or will be allowed.  The Debtor has filed one Claim objection to date, disputing the amount of the Claim asserted.  The Debtor's Plan will be funded in large part by the expected proceeds of the litigation with AHCA (the "**Litigation Proceeds**"). The anticipated payout of Litigation Proceeds is expected to be sufficient to satisfy Administrative Expenses, Allowed Wage Claims, establish a working capital reserve and fund a small portion of the Class 2 General Unsecured Claims. This should not be construed by any creditor to mean that its Claim will be allowed or that it will actually receive any certain percentage or distribution on its Claim.

### D.    *Significant Events in the Bankruptcy Including First Day Motions*

As of the Petition Date, Debtor, through its counsel, filed the following motions:

1.    Debtor's Emergency Application for Approval, on an Interim and Final Basis, of Employment of Jacqueline Calderin, Esq. and the law firm of Agentis PLLC as General Bankruptcy Counsel for the Debtor in Possession, *Nunc Pro Tunc* to Petition Date [ECF #9];

2.    Debtor's Emergency Motion for Entry of an Order Authorizing the Debtor's Continued Use of Cash Management System and Existing Bank Accounts [ECF# 12];

3.    Debtor's Emergency Motion for Entry of an Order Authorizing the Debtor to Pay Critical Vendor Claims in the Ordinary Course of Business [ECF# 15];

4.    Debtor's Motion for an Order Determining that (I) It is not a "Health Care Business" and, in the Alternative, if it is found to be a "Health Care Business" (II) the Appointment of an Ombudsman is Unnecessary [ECF# 32];

5.    Debtor's Application for Employment of Christopher M. David, Esq. and Fuerst Ittleman David & Joseph as Special Litigation Counsel to Represent the Debtor and Setting Final Hearing Pursuant to 11 U.S.C. § 327(e) and Local Rule 9013-1(C) and F.R.B.P. 6003 [ECF# 46];

18



6. Debtor's Motion for Authorization to Make Payment of an Administrative Expense to Gasher & Associates, P.A. for 2019 Tax Preparation Services *Nunc Pro Tunc* to February 13, 2020 [ECF# 48];

7. Debtor-In-Possession's Expedited Motion to Extend Exclusive Period for Filing a Plan of Reorganization and Soliciting Acceptances Thereof [ECF# 56]; and

8. Debtor's Objection to Claim of Magali Martinez Ramirez / Blanca Therapy Services, Corp (Claim No.: 2-1) [ECF# 69].

E. *Claims*

1. **Bar Date for Filing Proofs of Claims and Administrative Expenses**. The general Claims Bar Date in this case was on **March 16, 2020**.

2. **Claims Objections Generally**.  There are some Creditors that the Debtor scheduled as disputed, contingent, or unliquidated.  These Creditors have been so designated on Schedule F (the "**Disputed Creditors**").  To the extent that any of these Disputed Creditors filed a proof of Claim, the Debtor may object to these Claims.  In addition, in the event that proofs of Claim that may have been filed, but not scheduled, to which the Debtor may file an objection.  On September 8, 2020, the Debtor filed the *Debtor's Objection to Claim of Magali Martinez Ramirez / Blanca Therapy Services, Corp (Claim No.: 2-1)* [ECF# 69] objecting to *Claim of Magali Martinez Ramirez / Blanca Therapy Services, Corp (Claim No.: 2-1)*. Only creditors with allowed Claims are entitled to vote on the Plan.

**ARTICLE V.**
**DEADLINES FOR VOTING AND OBJECTING**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

A.    *Final Hearing to Approve the Disclosure Statement and Plan*

The hearing to finally approve this Disclosure Statement and confirm the Plan will be held at date to be set by the Court at the United States Bankruptcy Court, C. Clyde Atkins U.S. Courthouse, 301 North Miami Avenue, Courtroom 4, and Miami, Florida 33128, if the Court has not re-opened, the hearing will take place only by video conference conducted using the services of Zoom Video Communications, Inc.  Zoom will provide a password-protected link for the appropriate Zoom video conference to those who register to participate.  If the Plan is rejected by one or more Impaired Classes of Claims and at least one Class accepts, the Bankruptcy Court may still confirm the Plan, or modifications thereof, under Bankruptcy Code Section 1129(b) (commonly referred to as a "cram down") if it determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Class or Classes of Claims Impaired under the Plan.  The procedures and requirements for voting on the Plan are described in more detail below.

B.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed Ballot and return the Ballot in the enclosed envelope to:

**Clerk's Office - Miami Division**
C. Clyde Atkins United States Courthouse
T. 305.714.1800
301 North Miami Avenue, Room 150
Miami, FL 33128

With a copy to:

Nicole Grimal Helmstetter, Esq.
Counsel to the Debtor
Agentis PLLC
55 Alhambra Plaza, Suite 800
Coral Gables, Florida 33134

20



Your Ballot must be received by _____, 2020 or it will not be counted.

Each Creditor entitled to vote on either Plan may cast its vote for or against that Plan by completing, dating, and signing the Ballot Form (the "**Ballot**"), which shall accompany the Plan. The Bankruptcy Court will, by separate Order, order that Ballots and objections to Confirmation of the Plan, be received at the offices of Debtor's counsel, Nicole Grimal Helmstetter, Esq., Agentis PLLC, 55 Alhambra Plaza, Suite 800, Coral Gables, Florida 33134 and the Office of the United States Trustee, Region 21, 51 SW First Avenue, Room 1204, Miami, Florida 33130, no later than 5:00 p.m. on the date set forth in the Ballot and Order approving this Disclosure Statement or be provided by separate mailing.

This Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept the Plan. **UNDER THE BANKRUPTCY CODE, YOUR VOTE FOR ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNLESS YOU RECEIVE A COPY OF THIS DISCLOSURE STATEMENT PRIOR TO OR CONTEMPORANEOUS WITH SUCH SOLICITATION. THE SOLICITATION OF VOTES ON THE PLAN IS GOVERNED BY THE PROVISIONS OF SECTION 1125(b) OF THE BANKRUPTCY CODE, THE VIOLATION OF WHICH MAY RESULT IN SANCTIONS BY THE COURT, INCLUDING, BUT NOT LIMITED TO, DISALLOWANCE OF THE SOLICITED VOTE, AND LOSS OF THE "SAFE HARBOR" PROVISIONS OF SECTION 1125(e) OF THE BANKRUPTCY CODE.**

Only the votes of Creditors in the Classes that are Impaired by the relevant Plan will be counted to determine if that Plan is accepted by Creditors. Therefore, Classes 1 and 2 of Debtor's Plan will have their votes counted. Votes on the Plan will only be counted for those

21

Claims for which a proof of Claim was filed before the applicable Claims Bar Date, if any, providing such Claim has not been disallowed or suspended prior to the computation of the vote. **The Ballot Form does not constitute a proof of Claim**.

      **C.**      *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the Confirmation of the Plan must be filed with the Court at the Clerk's Office address provided above and served upon Debtor's counsel, Nicole Grimal Helmstetter, Esq., and the Office of the United States Trustee, 51 SW 1st Avenue, Room 1204, Miami, Florida 33130.

      **D.**      *Sources of Information*

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its business, properties, and management have been prepared from information furnished by the Debtor.

Certain of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents. While the Debtor has made every effort to retain the meaning of such other documents or portions that have been summarized, the Debtor urges that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of the document shall govern, control, and apply.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement.

No statements concerning the Debtor, the value of its property, or the value of any benefit offered to the holder of a Claim or Interest under the Plan should be relied on other than as set forth in this Disclosure Statement.  In arriving at a decision, parties should not rely on any representation or inducement made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be immediately reported to counsel for the Debtor.  If you want additional information about the Plan, you should contact Nicole Grimal Helmstetter, Esq., at T. 305.722.2002, or Agentis PLLC, 55 Alhambra Plaza, Suite 800, Coral Gables, Florida 33134.

E.    *Disclaimer*

**The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about it terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.  THE MATERIAL CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED SOLELY FOR THE USE OF CLAIMHOLDERS IN EVALUATING THE PLAN AND VOTING TO ACCEPT OR REJECT THE PLAN. ACCORDINGLY, YOU SHOULD NOT RELY ON IT FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON, OR WHETHER TO OBJECT TO, THE PLAN.  THE LIQUIDATION OF THE DEBTOR PURSUANT TO THE PLAN IS SUBJECT TO NUMEROUS CONDITIONS AND VARIABLES, AND THERE CAN BE NO ABSOLUTE ASSURANCE THAT THE PLAN, AS CONTEMPLATED, WILL BE EFFECTUATED.**

23

**THE DEBTOR BELIEVES THAT THE PLAN AND THE PROPOSED TREATMENT OF CLAIMS IS IN THE BEST INTEREST OF CREDITORS, AND THEREFORE URGES YOU TO VOTE TO ACCEPT THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), NOR HAS IT PASSED ON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.  THE PLAN SHOULD BE REVIEWED CAREFULLY.**

**NEITHER THE FILING OF THE PLAN NOR ANY STATEMENT OR PROVISION CONTAINED IN THE PLAN OR IN THIS DISCLOSURE STATEMENT, NOR THE TAKING BY ANY PARTY IN INTEREST OF ANY ACTION WITH RESPECT TO THE PLAN, SHALL (I) BE OR BE DEEMED TO BE AN ADMISSION AGAINST INTEREST AND (ii) UNTIL THE EFFECTIVE DATE, BE OR BE DEEMED TO BE A WAIVER OF ANY RIGHTS ANY PARTY IN INTEREST MAY HAVE (a) AGAINST ANY OTHER PARTY IN INTEREST OR (b) IN ANY OF THE ASSETS OF ANY OTHER PARTY IN INTEREST, AND, UNTIL THE EFFECTIVE DATE, ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED.  IF THE PLAN IS NOT CONFIRMED OR FAILS TO BECOME EFFECTIVE, NEITHER THE PLAN NOR THE DISCLOSURE STATEMENT, NOR ANY STATEMENT CONTAINED IN THE PLAN OR IN THE DISCLOSURE STATEMENT, MAY BE USED OR RELIED ON IN ANY MANNER IN ANY SUIT, ACTION, PROCEEDING OR CONTROVERSY, WITHIN OR WITHOUT THE DEBTOR'S BANKRUPTCY CASE, INVOLVING THE DEBTOR, EXCEPT WITH RESPECT TO CONFIRMATION OF THE PLAN**.

**ARTICLE VI.**
**SUMMARY OF THE PLAN AND DISTRIBUTION SCHEME**

A.    *SOURCES OF PLAN FUNDING*

1.    **The Plan Fund**. The Plan shall be funded from the following sources (the "**Plan Fund**"): (a) recoveries obtained from the Litigation Proceeds after payment of Allowed Administrative Claims and a set aside of a reserve for litigation costs in the event that the Reorganized Debtor elects to proceed with further litigation against AHCA or Wellcare, and (b) an "earn out" distribution from the Debtor's operations, after the first full

24

fiscal year that follows the year in which the first distributions under the Plan are made (the "**Earn Out From Operations**"). The term "Earn Out From Operations" shall mean the net disposable income of the Debtor for the full fiscal year following them first distribution under the Plan after payment of all ordinary course of business expenses and the establishment of a reserve for three months of operations.

      2.      **Sources of Funding Plan Payments.**   The Plan Fund shall be funded through the Debtor's provision of services to clients enrolled in private insurance plans, including but not limited to; Cigna, Aetna, Florida Blue, Tricare and United Healthcare. The Litigation Proceeds are expected to arrive in two segments; first from the payment of claims by AHCA and second, from Wellcare. The anticipated payout of Litigation Proceeds from the litigation against AHCA is expected to be sufficient to satisfy Administrative Expenses, Allowed Wage Claims, establish a working capital reserve and fund a small portion of the Class 2 General Unsecured Claims. The second round of litigation with Wellcare is expected to provide an additional payment to Class 2 General Unsecured Claims. For illustrative purposes, if the Debtor recovers $1 million of Litigation Proceeds, approximately 50% of that amount shall be used to satisfy Administrative Claims.[3] The remaining $500,000.000 shall be used first to satisfy Class 1 Allowed Wage Claims up to the Priority Cap with the balance paid to Class 2 General Unsecured Claims, after the establishment of a working capital reserve. The Reorganized Debtor, as reorganized, will retain and will be vested in all property of the Estate, excepting property which is to be disposed of as provided herein and executory contracts which are rejected pursuant to this Plan. Sofia Aneas will continue as President of the

---

[3] Special Litigation Counsel, Christopher David, Esq's employment was approved on a contingency fee basis in the amount of 35%. The law firm of Agentis, General Counsel for the Debtor, has not yet filed a fee application in this matter and has not received compensation for its services to date.



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

Reorganized Debtor. The retained Estate property shall be used by the Debtor in the ordinary course of its business, which will continue to be the operation of the corporation providing behavioral analysis services to children with developmental disabilities, including but not limited to; autism, down syndrome, attention deficit hyperactivity disorder (ADHD), depression, anxiety and other conduct and behavioral issues in its present form, or as may be expanded or modified in the business judgment of the Reorganized Debtor.

**B.    *CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS***

1.    <u>**Manner of Classification of Claims and Interests and Unclassified Claims.**</u>  As required by the Bankruptcy Code, the Plan classifies Claims and Equity Security Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Equity Security Interests is Impaired or Unimpaired.  The Plan provides the treatment of each Class will receive under the Plan. In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims are not classified.  The Allowed Claims against the Debtor's Estate are set forth and classified as follows:

a.    **Administrative Expense Claims**:    Each holder of an Administrative Expense Claim allowed under § 503 of the Code will be paid upon receipt of the potential Litigation Proceeds arising out of the Debtor's demand for payment of accounts receivable asserted against the Agency for Healthcare Administration of Florida ("**AHCA**") and Wellcare. Should the Reorganized Debtor chose to proceed to a second round of litigation against AHCA and/or Wellcare, a sufficient amount of the Litigation Proceeds, to be determined at that time, shall be set aside to fund actual projected litigation expenses. All Administrative Claims incurred in the ordinary course of the Debtor's business, including

26

without limitation, employee wages, utilities, and taxes, shall be paid by the Debtor or Reorganized Debtor in the ordinary course of business pursuant to customary terms and due dates.

        **b.**    **Administrative Bar Date:**  The deadline for filing for filing a motion for allowance of an Administrative Claim is _____, 2020 (the "**Administrative Claims Bar Date**"). All requests for allowance and payment of administrative expense claims (other than Professional Fee Claims or post-petition Claims incurred in the ordinary course of business which are current) must be filed by the Administrative Claims Bar Date.  Any such Administrative Claim that is not filed within this deadline shall be forever barred and any holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such request by the Administrative Claims Deadline shall be forever barred from asserting such Claims against the Debtor, the Reorganized Debtor or any of it property.

        **c.**    **Professional Fee Claims**:  The Bankruptcy Court must approve all requests for the payment of professional compensation and expenses to the extent incurred on or before the Confirmation Date.   Each Professional requesting compensation or reimbursement of expenses in the Proceedings pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation prior to the expiration of the deadline set by the Court.  Nothing herein shall prohibit each Professional from requesting interim compensation during the course of these cases pending Confirmation of the Plan.  All fees, costs, and disbursements of Professionals shall be the subject matter of applications to the Court for allowance or award in the manner prescribed by the Code.  Professional Fee Claims will be paid upon receipt of the Litigation Proceeds.

27

Special Litigation Counsel, Christopher David, Esq's employment was approved on a contingency fee basis in the amount of 35%. Agentis, General Counsel for the Debtor, has not yet filed a fee application in this matter and has not received any compensation for its services to date. Agentis holds an unapplied prepetition retainer in the amount of $10,349.99. Agentis' fees to date are approximately $70,000.00, which will be paid from the Litigation Proceeds when approved by Order of the Bankruptcy Court.

   **d.**  **United States Trustee Fees**. All fees required to be paid by 28 U.S.C. §1930(a) (6) ("**U.S. Trustee Fees**") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

   **2.**  **<u>Classified Claims</u>**

   **a.**  **Class 1. Allowed Wage Claims.** In light of their material and substantial contribution to the Debtor's business operations and going concern value, the Debtor shall treat the Claims of its independent contractors as priority Claims commensurate with the wage Claims of the Debtor's W-2 employees. The Debtor believes that all independent contractor claims' comply with the provisions of 507(a)(4)(B). Accordingly, pursuant to Section 507(a)(4), the Allowed Wage Claims shall receive a pro rata distribution in an amount of up to 100% of $13,650.00 (the "**Priority Cap**"). Any holders of Allowed Wage Claims whose total allowed Claim exceeds the Priority Cap shall participate in distributions to Class 2 Allowed General Unsecured Claims. **This class is Impaired and Claimants other than Insiders are entitled to vote under the Plan.**

   **b.**  **Class 2. <u>Allowed General Unsecured Claims.</u>** After payment of allowed Administrative Expense Claims and Class 1 Allowed Wage Claims, Allowed General

28



Unsecured Claims (including Allowed Wage Claims above the Priority Cap) shall receive a pro rata distribution from the balance of the Plan Fund. **Class 2 is Impaired and Claimants other than Insiders are entitled to vote.**

                **c.**      **Class 3. <u>Equity Interests of the Directors</u>.** Class 3 consists of the Equity in the Debtor which are owned by the Directors and retained under the Plan. **Class 3 is not Impaired and is not entitled to vote.**

                **d.**      **<u>Impaired Classes.</u>** The following classes are Impaired and entitled to vote on the Plan: Classes 1 and 2.

## ARTICLE VII.
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

      **A.**      *Ballots and Voting Deadline*. **The deadline for submitting Ballots for the acceptance or rejection of the Plan is _____, 2020** 5:00 p.m., Eastern Daylight Time (the "**Voting Deadline**").

      All Claimants (or their authorized representatives) entitled to vote must:

        1.      carefully review the Ballot and corresponding instructions,

        2.      execute the Ballot, and

        3.      return the Ballot to the address indicated on the Ballot so that it is actually received by the Voting Deadline.

      **B.**      *Claimholders Entitled to Vote*. Any Creditor who is not an Insider, and whose Claim is not a Disputed Claim or an Unimpaired Claim, is entitled to vote. Under the Plan a "Disputed Claim" means (a) a Claim that is listed on a Debtor's Schedules as other than disputed, contingent or unliquidated, but as to which an objection has been filed, and such objection has not been withdrawn or denied by a Final Order; (b) a Claim that is listed on Debtor's Schedules as disputed, contingent or unliquidated; or (c) a proof of Claim or request

29

for payment of an Administrative Claim that has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law.[4]  Returning the Ballot to the Debtor or Debtor's Counsel does not constitute filing a proof of Claim or Interest.

Any Holder of a Disputed Claim is not entitled to vote, unless the Bankruptcy Court, on motion filed by such party, temporarily allows the Claim in a specific amount for the purpose of accepting or rejecting the Plan.  Such motion must be heard and determined by the Bankruptcy Court before the Confirmation Hearing on the Plan.  A vote may be disregarded if the Bankruptcy Court determines that the Claimholders acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code.  Ballots must be filed in the Case, which can be accomplished by sending completed Ballots to:

> **Clerk's Office - Miami Division**
> C. Clyde Atkins United States Courthouse
> T. 305.714.1800
> 301 North Miami Avenue, Room 150
> Miami, FL 33128
>
> With a copy to:
>
> Nicole Grimal Helmstetter, Esq.
> Counsel to Debtor
> Agentis PLLC
> 55 Alhambra Plaza, Suite 800
> Coral Gables, Florida 33134

Ballots sent to Debtor's Counsel do not constitute filing a proof of Claim or Interest.

Under Bankruptcy Code Section 1126(f), a class that is not Impaired under a Chapter 11 plan, and each Holder of a Claim or Interest in such class, are conclusively presumed to have accepted the Chapter 11 plan.  Under Bankruptcy Code Section 1126(g), a class is

---

[4] Administrative Claims are not impaired and therefore not entitled to vote.

30



deemed not to have accepted a Chapter 11 plan if the Holders of Claims or Interests in such class do not receive or retain any property under the Chapter 11 Plan on account of such Claims or Interests.  Holders of Claims or Interests that are Unimpaired under the Plan, or that are not entitled to receive or retain any property under the Plan, are not entitled to vote to accept or reject the Plan.  The Debtor will not be soliciting votes from such Claimholders or Interest-holders.

      **C.**    ***Bar Date for Filing Proofs Claim.***  The Bankruptcy Court established March 16, 2020 as the general deadline for filing proofs of Claim in the Chapter 11 Case (called the "**Claims Bar Date**") with the following exceptions: (i) in the event that the Debtor amends its Schedules of Assets and Liabilities, the Debtor must give notice of such amendment to the Creditor affected thereby, and the affected Creditor shall have until the later of the Claims Bar Date or thirty (30) days from the date on which notice of such amendment was given to file a proof of Claim; (ii) in the event that a Claim arises with respect to the Debtor's rejection of an executory contract or unexpired lease, any Creditor shall have until the later of the Claims Bar Date or thirty (30) days after the entry of any Order authorizing the rejection of the executory contract or unexpired lease to file a proof of Claim.

      **D.**    ***Definition of Impairment***.  Under Bankruptcy Code section 1124, a class of Claims or Interests is Impaired under a plan of reorganization unless, with respect to each Claim or Interests of such class, the Plan:

         1.    leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or interest; or

         2.    notwithstanding any contractual provision or applicable law that entitles the holder of a Claim or interest to receive accelerated payment of such Claim or interest after the occurrence of a default:



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

3.    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Bankruptcy Code section 365(b)(2);

4.    reinstates the maturity of such Claim or interest as it existed before the default;

5.    compensates the holder of such Claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

6.    does not otherwise alter the legal, equitable, or contractual rights to which such Claim or interest entitles the holder of such Claim or interest.

**E.    *Disallowed Claims*.**  All Claims held by persons against whom the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code, shall be deemed "Disallowed Claims" pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed Disallowed pursuant to this Section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

**F.    *Acceptance by Class of Claimholders*.**  A Class of Claimholders is deemed to have accepted the Plan, if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (2) in number of the Allowed Claims of such Class which actually cast votes.

**G.    *Cramdown*.  In the event that any Impaired Class of Claimholders with Claims against the Debtor fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code ("Cramdown Provisions").  For purposes of seeking Confirmation of the Plan under the Cramdown Provisions, the**

32



**Debtor reserves the right to modify or vary the terms of the Plan or the treatment of the Claims of those Classes that rejected the Plan so as to comply with the requirements of the Cramdown Provisions.**

Unsecured creditors are Impaired under the Plan.  In the event that unsecured creditors do not vote in favor of the Plan, the Debtor will seek to confirm the Plan over the "no" vote of the unsecured creditors or "cramdown."  Notwithstanding such a possible "no" vote, the Debtor believes that the Plan  is fair and equitable and gives unsecured creditors a greater return than they would receive if the Debtor were liquidated.  If the Debtor is liquidated, unsecured creditors would receive nothing on account of their Claims as all of the Debtor's property would be liquidated for the benefit of the Allowed Secured Claims alone.

H.      *Classes Impaired Under the Plan*

**The following Classes are Impaired under the Plan: Class 1 and Class 2.**

I.      *Vote Required for Class Acceptance*.

The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of that class that actually cast Ballots for acceptance or rejection of the plan; that is, acceptance takes place only if creditors holding Claims constituting at least two-thirds in dollar amount of the total amount of Claims and more than one-half in number of the creditors actually voting cast their Ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the allowed interests of that class.

33

J.      *Information on Voting and Ballots*.

1.      **Transmission of Ballots to Claimholders**

Ballots are being forwarded to Claimholders in Classes 1 and 2 of the Plan, and in accordance with the Bankruptcy Rules, an order approving the Disclosure Statement and the Solicitation Procedures Order.  Those Claimholders whose Claims are Unimpaired under the Plan are conclusively presumed to have accepted the Plan under Bankruptcy Code Section 1126(f), and therefore need not vote concerning the Plan.  Under Bankruptcy Code Section 1126(g), Claimholders who do not either receive or retain any property under the Plan are deemed to have rejected the Plan.

2.      **Ballot Tabulation Procedures.**

Pursuant to the Solicitation Procedures Order, the amount and classification of a Claim and the procedures that will be used to tabulate acceptances and rejections of the Plan shall be exclusively as follows: any timely received Ballot that contains sufficient information to permit the identification of the Claimant and is cast as an acceptance or rejection, as the case may be, of the Plan, subject to the following exceptions and clarifications:

a.      If a Claim is deemed Allowed in accordance with the Plan, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

b.      If a Claim has been established or otherwise allowed for voting purposes by Order of the Bankruptcy Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution;

c.      If a Claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of Claim was not (i) filed by the applicable deadline to file proofs of

34



Claim or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, the Claim will be disallowed in its entirety for voting purposes;

        d.      For all persons or entities who timely filed a proof of Claim reflecting a Claim or portion of a Claim that is contingent or if a Claim objection is pending, the Claim shall be disallowed in its entirety for voting purposes, subject to the right of such Holder to file a motion for temporary allowance;

        e.      If a Ballot is properly completed, executed and timely filed, but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan, the Ballot will not be counted;

        f.      If a proof of Claim has been timely filed and has not been objected to before the Confirmation Hearing, the voted amount of that Claim shall be the liquidated amount specified in the proof of Claim; and

        g.      If no proof of Claim has been timely filed, the voted amount of a Claim shall be equal to the amount listed for the particular Claim in the Schedules, as and if amended, to the extent such Claim is not listed as contingent, unliquidated, or disputed, and the Claim shall be placed in the appropriate Class based on the Debtor's records and consistent with the Schedules.

Ballots that fall within the following categories will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected, except as specified:

        h.      Any Ballot received after the Voting Deadline unless the Debtor or Bankruptcy Court shall have granted an extension in writing of the Voting Deadline with respect to such Ballot;

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

i.    Any Ballot that is illegible or contains insufficient information to permit the identification of the Claimant;

j.    Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan as of the Voting Record Date;

k.    Any duplicate Ballot;

l.    Any Ballot that is unsigned, or signed by someone other than the Holder of the Claim (or the Claimholders authorized representative); or

m.    Any acceptance or rejection submitted on something other than the Ballot form provided by the Debtor and approved pursuant to the Solicitation Procedures Order.

The Debtor believes that the foregoing proposed procedures provide for a fair and equitable voting process.  As mentioned above, if any Claimant seeks to challenge the allowance of its Claim for voting purposes, such creditor must serve on the Debtor and file with the Court a motion requesting the temporary allowance of such Claim in a different amount for purposes of voting to accept or reject the Plan no later than _____, 2020.  The Ballot of any Claimant filing such a motion shall not be counted unless temporarily allowed by the Bankruptcy Court for voting purposes, after notice and a hearing.

Whenever two (2) or more Ballots are cast voting the same Claim prior to the Voting Deadline, the latest dated Ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballots, provided, however, that where an ambiguity exists as to which Ballot reflects the voter's intent, the Clerk of the Bankruptcy Court reserves the right to contact the Claimant and calculate the vote according to such voter's written instructions.  This procedure is without prejudice to the Debtor's right to object to the

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

validity of the second Ballot on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes. This procedure of counting the last Ballot is consistent with practice under various state and federal corporate and securities laws. Furthermore, the Debtor proposes that in its sole discretion they can agree to allow a Claimant to change its vote after the Voting Deadline without further order of the Bankruptcy Court.

Claim splitting is not permitted and Claimants who vote must vote all of their Claims within a particular class to either accept or reject the Plan.

## ARTICLE VIII.
## CONFIRMATION OF PLAN

A.    *Solicitation of Acceptances.*

The Debtor is soliciting your vote.

**NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND IN ANY SOLICITATION MATERIALS APPROVED BY THE BANKRUPTCY COURT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO DEBTOR'S COUNSEL FOR APPROPRIATE ACTION.**

**THIS IS A SOLICITATION SOLELY BY THE DEBTOR, AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY, ACCOUNTANT, OR OTHER PROFESSIONAL FOR THE DEBTOR. THE REPRESENTATIONS, IF ANY, MADE IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR AND NOT OF SUCH SHAREHOLDERS, ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.**

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the Claimant has received a copy of a disclosure statement approved by the

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

Bankruptcy Court prior to, or concurrently with, such solicitation.  This solicitation of votes on the Plan is governed by Bankruptcy Code Section 1125(b).  Violation of Bankruptcy Code Section 1125(b) may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

**B.**    ***Requirements for Confirmation of the Plan.***

At the confirmation hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code Section 1129 have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan.  For the Plan to be confirmed, Bankruptcy Code Section 1129 requires that:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code;

2.    The Debtor has complied with the applicable provisions of the Bankruptcy Code;

3.    The Plan has been proposed in good faith and not by any means forbidden by law;

4.    Any payment or distribution made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

5.    The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the

38



Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interest of Claimholders and Interest-holders and with public policy; and the Debtor has disclosed the identity of any insider that will be employed or retained post-confirmation and the nature of any compensation for such insider;

6.    Any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

7.    With respect to each Impaired Class of Claims or Interests, either each holder of a Claim or Interest of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.  If Bankruptcy Code Section 1111(b)(2) applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that Claim;

8.    Each Class of Claims or Interests has either accepted the Plan or is not Impaired under the Plan;

9.    Except to the extent that the holder of a particular Allowed Administrative Expense Claim, or Allowed Wage Claim has agreed to a different treatment of its Claim, the Plan provides that such Claims shall be paid in full on the later of the Effective

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

Date or the date on which such Claim becomes an Allowed Claim, or as soon as practicable thereafter;

10.     If a Class of Claims or Interests is Impaired under the Plan, at least one such Class of Claims or Interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class; and,

11.     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code for Confirmation and that the Plan was proposed in good faith.  The Debtor believes it has complied, or will have complied, with all the requirements of the Bankruptcy Code governing confirmation of the Plan.

C.     *Acceptances Necessary to Confirm the Plan.*

Voting on the Plan by each holder of a Claim (or its authorized representative) is important.  Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim vote in favor of the Plan in order for the Bankruptcy Court to confirm the Plan.  Generally, to be confirmed under the acceptance provisions of Bankruptcy Code Section 1126(a), the Plan must be accepted by each Class of Claims that is Impaired under the Plan by parties holding at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the Plan.  Even if all Classes of Claims accept the Plan, the Bankruptcy Court may nonetheless refuse to confirm the Plan.

D.     *Cramdown*.

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A Chapter 11 plan does not discriminate unfairly within the meaning of the Bankruptcy Code receives more than it is legally entitled to receive for its Claims or interests.  "Fair and equitable" has different meanings for holders of secured and unsecured Claims and interests. With respect to a secured Claim, "fair and equitable" means either (i) the Impaired secured creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claims with a present value as of the Effective Date of the Plan at least equal to the value of such creditor's interest in the property securing its liens; (ii) property subject to the lien of the Impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the Impaired secured creditor realizes the "indubitable equivalent" of its Claim under the Plan.

With respect to an unsecured Claim, "fair and equitable" means either (i) each Impaired creditor receives or retains property of a value equal to the amount of its Allowed Claim or (ii) the holders of Claims or interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

With respect to Interests, "fair and equitable" means either (i) each Impaired Interest receives or retains, on account of that Interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the Interest, or (ii) the holder of

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

any Interest that is junior to the Interest of that Class will not receive or retain under the Plan, on account of that junior Interest, any property.

The Debtor believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class of Claims and Interests. In the event at least one Class of Impaired Claims or Interests rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims or Interest.

In this case the Debtor is proposing a total distribution of approximately five percent (5%) percent to Class 2. Unsecured creditors are, therefore, Impaired under the Plan. In the event that unsecured creditors do not vote in favor of the Plan, the Debtor will seek to confirm the Plan over the "no" vote of the unsecured creditors or "cramdown." Notwithstanding such a possible "no" vote, the Debtor believes that the Plan is fair and equitable and gives unsecured creditors a greater return than they would receive if the Debtor were liquidated. If the Debtor is liquidated, unsecured creditors would receive nothing on account of their Claims as all of the Debtor's property would be liquidated for the benefit of the Allowed Secured Claims alone. Accordingly, the Plan is in the best interests of all of its creditors.

E.    *Execution of Ballots by Representatives.*

Federal Rule of Bankruptcy Procedure 3018(c) requires that an acceptance or rejection of a Chapter 11 Plan shall be in writing, identifying the plan accepted or rejected, and be signed by the creditor or equity security holder or an authorized agent. The Ballot approved by the Solicitation Procedure Order requires the identification of persons signing in a fiduciary or representative capacity. To be counted, completed Ballots signed by trustees, executors,

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity must indicate their capacity when signing.  At the Debtor's request, Ballot signatories must submit proper evidence, satisfactory to the Debtor of his or her authority to so act.  Failure to indicate the capacity of the signatory to the Ballot may result in the Ballot being deemed invalid and not counted.

  **F.**  *Waivers of Defects and Other Irregularities Regarding Ballots.*

  Unless otherwise directed by the Bankruptcy Court, all questions concerning the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Debtor in its sole discretion, whose determination will be final and binding. The Debtor reserves the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtor or its counsel, be unlawful.  Any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Bankruptcy Court determines.  Neither the Debtor, the Clerk of the Bankruptcy Court, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification; provided, however, that the Debtor and/or Clerk of the Bankruptcy Court will indicate on the Ballot summary the Ballots, if any, that were not counted, and will provide the original of such Ballots with the original of the Ballot summary at the Confirmation Hearing.  Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until any irregularities have been cured or waived.  Unless otherwise directed by the Bankruptcy Court, Ballots previously furnished, and as to which any irregularities have not subsequently been cured or waived, will be invalidated.

  **G.**  *Withdrawal of Ballots and Revocation.*



Except as otherwise directed by the Bankruptcy Court after notice and a hearing, any holder of a Claim (or its authorized representative) in an Impaired Class who has delivered a valid Ballot for the acceptance or rejection of the Plan to the Clerk of the Bankruptcy Court may withdraw such Ballot at any time before the Voting Deadline.

To be valid, a notice of withdrawal must:

1.      Contain the description of the Claims to which it relates and the aggregate principal amount or number of shares represented by such Claims;

2.      Be signed by the Creditor (or its authorized representative) in the same manner as the Ballot; and

3.      Be received by the Clerk of the Bankruptcy Court in a timely manner at the address specified in the Ballot instructions for the submission of Ballots with a copy to Debtor's undersigned counsel.

The Debtor expressly reserves the absolute right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots that is not received in a timely manner by the Clerk of the Bankruptcy Court and Debtor's counsel will not be effective to withdraw a previously furnished Ballot.

Any creditor (or its authorized representative) who has previously submitted a properly completed Ballot before the Voting Deadline may revoke such Ballot and change its vote by submitting before the Voting Deadline a subsequent, properly completed Ballot for acceptance or rejection of the Plan.  In addition, if a Creditor submits a valid notice of withdrawal prior to the Voting Deadline, such holder may submit a new Ballot, and such Ballot will be counted so

44

long as it is received prior to the Voting Deadline and is otherwise submitted in accordance with the order approving the Disclosure Statement.

## ARTICLE IX.
## EFFECTS OF CONFIRMATION OF PLAN AND DISCHARGE

**A.**    **Discharge of Debt**. Upon the Effective Date, the Debtor shall be fully and completely discharged to the fullest extent permitted by Sections 1141 and 524 of the Bankruptcy Code, from all Claims, debts and liabilities against the Debtor arising before the Effective Date, except as specifically provided for by the Plan.

**B.**    **Releases. As of the Effective Date, except for the Debtor's express obligations respecting distributions herein and Claims reserved by the Debtor to be pursued under the Plan, the Debtor and the Reorganized Debtor are hereby released and discharged from any and all Claims, causes of action, demands, liabilities, losses, damages, whether known or unknown, under federal, state or other law, that arose after the Petition Date and prior to the Effective Date in connection with any matter arising from or relating to the Debtor, except for any acts or omissions resulting from willful misconduct, fraud, or gross negligence.**

**C.**    **Injunction.**  Commencing on the Effective Date, all persons who hold or who have held a Claim or Interest in the Debtor shall be permanently enjoined from commencing or continuing any action, employment of process, or act to collect, offset, avoid or recover any Claim against the Debtor, except as otherwise provided under the Plan.

**D.**    **Rejection and Assumption of Certain Executory Contracts and Unexpired Leases.**    The Debtor has no unexpired leases, however, the Debtor currently has 89 independent contractor agreements with therapists. All executory contracts are deemed rejected

45

upon entry of the order confirming this Plan, unless otherwise expressly assumed. The Debtor reserves the right to file motions for the assumption at any time prior to the Confirmation Date and to prosecute any such motion to entry of a Final Order anytime thereafter.

**Various Independent Contractor Agreements:**

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 1 | 2K Associates, LLC<br>21221 SW 125 Path<br>Miami FL 33177-0000 | No expiration. | Professional services agreement. |
| 2 | A Listening Space Corp.<br>711 Biltmore Way, Apt. 202<br>Miami FL 33134-0000 | No expiration. | Professional services agreement. |
| 3 | A.A.A. Care Services, Corp.<br>6090 SW 22nd Street<br>Miami FL 33155-0000 | No expiration. | Professional services agreement. |
| 4 | ABA & Counseling Works, LLC<br>186 NE 106th St.<br>Miami FL 33138-0000 | No expiration. | Professional services agreement. |
| 5 | ABA for Autism, Corp.<br>5230 W 26 Court<br>Hialeah FL 33016-0000 | No expiration. | Professional services agreement. |
| 6 | ABA for Kids Work, Corp.<br>7150 SW 23 Street<br>Miami FL 33155-0000 | No expiration. | Professional services agreement. |
| 7 | ABMG Behavioral Services, LLC<br>5665 W 20 AVE APT 302<br>Hialeah FL 33012-0000 | No expiration. | Professional services agreement. |
| 8 | AC Behavioral Services, LLC<br>4880 NW 177 St.<br>Opa Locka FL 33055-0000 | No expiration. | Professional services agreement. |
| 9 | AC Medical Services, Inc.<br>2001 SW 84 Avenue<br>Miami FL 33155-0000 | No expiration. | Professional services agreement. |
| 10 | Adaptive Therapy, LLC<br>1841 West 73rd Place<br>Hialeah FL 33014-0000 | No expiration. | Professional services agreement. |
| 11 | Alcanzando Estrellas, LLC<br>3650 NW 36 Street APT 406<br>Miami FL 33142-0000 | No expiration. | Professional services agreement. |

46

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 12 | Alex & Isa Services, LLC<br>649 E 32 Street<br>Hialeah FL 33013-0000 | No expiration. | Professional services agreement. |
| 13 | Alexa Health, Corp.<br>11470 SW 57th Street<br>Miami FL 33173-0000 | No expiration. | Professional services agreement. |
| 14 | All Hands for Help Corp.<br>10772 SW 228 Terr.<br>Miami FL 33170-0000 | No expiration. | Professional services agreement. |
| 15 | Alonso Therapy Services, Corp.<br>5612 NW 3 Street<br>Miami FL 33126-0000 | No expiration. | Professional services agreement. |
| 16 | Angels Dream, LLC<br>7632 NW 3 Street<br>Miami, FL 33126 | No expiration. | Professional services agreement. |
| 17 | Bady Kids Support, Corp.<br>10201 Fontainebleau Blvd APT 202<br>Miami, FL 33172 | No expiration. | Professional services agreement. |
| 18 | Behavior and Parenting Care, Corp.<br>45 SW 63rd Court<br>Miami, FL 33144 | No expiration. | Professional services agreement. |
| 19 | Behavior and Wellness, Corp.<br>7042 W 30 Avenue<br>Hialeah, FL 33018 | No expiration. | Professional services agreement. |
| 20 | Behavior Therapist Services, LLC<br>210 Fontainbleau Blvd APT 413<br>Miami, FL 33172 | No expiration. | Professional services agreement. |
| 21 | Blanca Therapy Services, Corp.<br>7550 South Waterway Drive<br>Miami, FL 33155 | No expiration. | Professional services agreement. |
| 22 | Brain Connect Aba Therapy, Inc.<br>45 SW 63rd Court<br>Miami, FL 33144 | No expiration. | Professional services agreement. |
| 23 | Bright Therapy Solution, Inc.<br>20721 SW 116 Road<br>Miami, FL 33189 | No expiration. | Professional services agreement. |

47

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 24 | Canela Therapy Services, LLC<br>16620 SW 44 Street<br>Miami, FL 33185 | No expiration. | Professional services agreement. |
| 25 | Carmen Sahagun<br>4808 Queen Palm Lane<br>Fort Lauderdale, FL 33319 | No expiration. | Professional services agreement. |
| 26 | Castillo Behavior, Inc.<br>3845 SW 103 Avenue APT 223 C<br>Miami, FL 33165 | No expiration. | Professional services agreement. |
| 27 | Castillo Learning, LLC<br>3845 SW 103rd Avenue APT 223C<br>Miami, FL 33165 | No expiration. | Professional services agreement. |
| 28 | Change Therapy Services, Corp.<br>9246 NW 120th Terrace<br>Hialeah, FL 33018 | No expiration. | Professional services agreement. |
| 29 | Coira Therapy Services, Corp.<br>423 E 27th Street<br>Hialeah, FL 33013 | No expiration. | Professional services agreement. |
| 30 | DCM Behavior Therapy, Inc.<br>11521 SW 81st Terrace<br>Miami, FL 33173 | No expiration. | Professional services agreement. |
| 31 | Delarue Services, Corp.<br>8204 SW 176th Terrace<br>Miami, FL 33157 | No expiration. | Professional services agreement. |
| 32 | Dreaming In Blue, Corp.<br>8420 SW 154th Circle Court APT 536<br>Miami, FL 33193 | No expiration. | Professional services agreement. |
| 33 | Duque-Dimart Therapy, Inc.<br>8988 SW 40th Terrace<br>Miami, FL 33165 | No expiration. | Professional services agreement. |
| 34 | Estevez Therapy Services, Corp.<br>423 East 27th STreet<br>Hialeah, FL 33013 | No expiration. | Professional services agreement. |
| 35 | Felipe Therapy Services, LLC<br>165 SW 48th Court<br>Miami, FL 33134 | No expiration. | Professional services agreement. |

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 36 | Fiol Behavior Therapy, Corp. 17880 SW 107th Avenue APT 2 Miami, FL 33157 | No expiration. | Professional services agreement. |
| 37 | First Kids Therapy, Corp. 9228 West 33 Way Hialeah, FL 33018 | No expiration. | Professional services agreement. |
| 38 | GC Behavior, Inc. 6420 NW 114th Avenue APT 1332 Miami, FL 33178 | No expiration. | Professional services agreement. |
| 39 | Gracie & Lily Services, Corp. 527 East 21 Street APT 5 Hialeah, FL 33013 | No expiration. | Professional services agreement. |
| 40 | H & F Therapy Services, Inc. 11520 SW 81st Terrace Miami, FL 33173 | No expiration. | Professional services agreement. |
| 41 | Happy Growing, LLC 555 NW 72nd Avenue APT 201 Miami, FL 33126 | No expiration. | Professional services agreement. |
| 42 | HBB Harmony Balance Brain, Corp. 45 SW 63rd Court Miami, FL 33144 | No expiration. | Professional services agreement. |
| 43 | Heviamador, Inc. 10811 SW 164 ST Miami, FL 33157 | No expiration. | Professional services agreement. |
| 44 | Integrity First Solution, Inc. 3660 SW 16 Terr., Apt 11 Miami, FL 33145 | No expiration. | Professional services agreement. |
| 45 | J & J Behavior Services, Corp. 211 East 51st Street Hialeah, FL 33013 | No expiration. | Professional services agreement. |
| 46 | Kety Lopez LMHC, Inc. 850 N Miami Ave., Apt W908 Miami, FL 33136 | No expiration. | Professional services agreement. |
| 47 | KP Advance Group, LLC 890 SW 154 Path Miami, FL 33194 | No expiration. | Professional services agreement. |
| 48 | L & L Behavior Development, Corp 2110 SW 82nd Avenue Miami, FL 33155 | No expiration. | Professional services agreement. |

49

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 49 | L&A Behavioral Services, Inc.<br>3900 SW 88th Place APT 18<br>Miami, FL 33165 | No expiration. | Professional services agreement. |
| 50 | LAI Behaviour Analysis, Inc.<br>981 NW 132 AVE<br>Miami, FL 33182 | No expiration. | Professional services agreement. |
| 51 | Lauren Therapy Services, LLC<br>2940 SW 102nd Avenue APT<br>F-211<br>Miami, FL 33165 | No expiration. | Professional services agreement. |
| 52 | Leas Behavioral Services, LLC<br>12021 SW 176th Terrace<br>Miami, FL 33177 | No expiration. | Professional services agreement. |
| 53 | Light Of Life Baez, Corp.<br>20731 NW 28th Avenue<br>Opa Locka, FL 33056 | No expiration. | Professional services agreement. |
| 54 | Lissets Behaviors Services,<br>Corp.<br>17485 NW 67th Court APT L<br>Hialeah, FL 33015 | No expiration. | Professional services agreement. |
| 55 | Love and Therapy, LLC<br>14321 SW 88th Street APT F<br>Miami, FL 33186 | No expiration. | Professional services agreement. |
| 56 | M & Y Therapy Services, Inc.<br>11044 SW 156 CT<br>Miami, FL 33196 | No expiration. | Professional services agreement. |
| 57 | MCE Behavior Therapy, LLC<br>630 SW 49th Avenue<br>Miami, FL 33134 | No expiration. | Professional services agreement. |
| 58 | MEGR Services Corp.<br>2370 NW 17th Avenue APT<br>209<br>Miami, FL 33142 | No expiration. | Professional services agreement. |
| 59 | Melinda Clark, LLC<br>50 SW 10th Street, Apt. 1306<br>Miami, FL 33130 | No expiration. | Professional services agreement. |
| 60 | Mendez Aba Services, Corp.<br>11507 SW 6th Street<br>Miami, FL 33174 | No expiration. | Professional services agreement. |
| 61 | Mothera, Inc.<br>10443 SW 225 Terrace<br>Miami, FL 33190 | No expiration. | Professional services agreement. |

50

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 62 | Numa Services, Inc.<br>18218 SW 154 CT<br>Miami, FL 33187 | No expiration. | Professional services agreement. |
| 63 | Okmind, LLC<br>2221 SW 69th Avenue<br>Miami, FL 33155 | No expiration. | Professional services agreement. |
| 64 | Olivera Care Group LLC<br>212 NW 58th Avenue<br>Miami, FL 33126 | No expiration. | Professional services agreement. |
| 65 | Oneironautics, LLC<br>7231 SW 142nd Avenue<br>Miami, FL 33183 | No expiration. | Professional services agreement. |
| 66 | Our Child Behavior, Inc.<br>19310 NW 82nd Court<br>Hialeah, FL 33015 | No expiration. | Professional services agreement. |
| 67 | Pereira's Health Solutions, Inc.<br>12350 SW 36th Street<br>Miami, FL 33175 | No expiration. | Professional services agreement. |
| 68 | Pesant Herapeutics, Inc.<br>711 Biltmore Way, Unit 403<br>Miami, FL 33134 | No expiration. | Professional services agreement. |
| 69 | Pou Therapy Services, Inc.<br>8333 Lake Dr., #105<br>Miami, FL 33166 | No expiration. | Professional services agreement. |
| 70 | Raiza Therapy Services, LLC<br>1625 NW 129th Street<br>Miami, FL 33167 | No expiration. | Professional services agreement. |
| 71 | Retos, LLC<br>14791 SW 138th Terrace<br>Miami, FL 33196 | No expiration. | Professional services agreement. |
| 72 | Rosmery Services, Corp.<br>5130 East 10th Avenue<br>Hialeah, FL 33013 | No expiration. | Professional services agreement. |
| 73 | S & J ABA Service, LLC<br>10031 W 35th Ln.<br>Hialeah, FL 33018 | No expiration. | Professional services agreement. |
| 74 | Secure Minds, LLC<br>3550 NW 85th Ct., Apt 134<br>Miami, FL 33122 | No expiration. | Professional services agreement. |

51

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 75 | Sensory Behavior, Inc.<br>15081 Woodrich Bent CT., Apt. 416<br>Fort Myers, FL 33908 | No expiration. | Professional services agreement. |
| 76 | Serendipity Services, Corp.<br>4832 SW 135th Place<br>Miami, FL 33175 | No expiration. | Professional services agreement. |
| 77 | Shanaya Ruiz<br>10031 W 35th Lane<br>Hialeah, FL 33018 | No expiration. | Professional services agreement. |
| 78 | Sotomayor Behavioral Services, LLC<br>11611 SW 123 Ave.<br>Miami, FL 33186 | No expiration. | Professional services agreement. |
| 79 | Step Up Behavioral Therapy Center, LLC<br>890 SW 154 Path<br>Miami, FL 33194 | No expiration. | Professional services agreement. |
| 80 | T & R Franco, Corp.<br>10910 NE 9th Court<br>Miami, FL 33161 | No expiration. | Professional services agreement. |
| 81 | Top Excellence Services, Inc.<br>11501 SW 132nd Avenue<br>Miami, FL 33186 | No expiration. | Professional services agreement. |
| 82 | Vega Aba Services Corp.<br>2256 SW 16th Terrace<br>Miami, FL 33145 | No expiration. | Professional services agreement. |
| 83 | VR Solutions Behavior<br>4040 SW 153rd Place<br>Miami, FL 33185 | No expiration. | Professional services agreement. |
| 84 | W&J Samuell, Corp.<br>15231 SW 8th Street APT 302<br>Miami, FL 33193 | No expiration. | Professional services agreement. |
| 85 | X Therapy Services, Inc.<br>2100 SW 84th Ave<br>Miami, FL 33155 | No expiration. | Professional services agreement. |
| 86 | Yanay Guerra Counseling, Inc.<br>5970 Indian Creek Dr., Apt. 306<br>Miami Beach, FL 33140 | No expiration. | Professional services agreement. |
| 87 | YBA Global, Inc.<br>5271 SW 8TH St., Apt. 413<br>Miami, FL 33134 | No expiration. | Professional services agreement. |

52

| # | Party Name and Address | Term Remaining | Description of Contract or Lease |
|---|---|---|---|
| 88 | Your Child Behavior Counseling, Inc.<br>7120 Fairway Drive APT L5<br>Hialeah, FL 33014 | No expiration. | Professional services agreement. |
| 89 | YPH Therapy Services Corp.<br>8356 NW 10th Street<br>Miami, FL 33126 | No expiration. | Professional services agreement. |

**E.**     **Management of Reorganized Debtor.**

Upon Confirmation of the Plan, Sofia Aneas will continue as President of the Reorganized Debtor.

## ARTICLE X.
## POSSIBLE CAUSES OF ACTION AFTER CONFIRMATION

The Debtor reserves the right to commence or continue to prosecute any and all Causes of Action which are unresolved during the pendency of this Bankruptcy Case. The Debtor has reviewed its books and records and is not aware of any other Claim or Cause of Action accruing to the Debtor, other than the collection of accounts receivable against AHCA and Wellcare, in the ordinary course of business, including any rights and Claims appurtenant thereto. **The Debtor does not have the financial wherewithal to conduct a fulsome Avoidance Action analysis pursuant to Section 544 of the Bankruptcy Code. To the extent any Avoidance Actions exist, the Debtor believes that the targets would likely be the Debtor's current creditors. Accordingly, the Debtor specifically abandons any and all potential Avoidance Actions.**

**Because all investigations and inquiries have not yet been completed, it is possible that there may be additional Causes of Action not mentioned herein and no party should assume that any release or discharge provision contained in the Plan, or the**

53

**Confirmation Orders, will bar or otherwise inhibit the Reorganized Debtor from taking any action to prosecute or enforce such additional Causes of Action, for which the Debtor preserves the right to pursue.** Under the circumstances, it is not feasible or in the best interests of the Debtor's Estate or its creditors to allow the continuing investigation to delay Confirmation of the Plan. Notwithstanding the foregoing, the Debtor is not aware of any Claim or Cause of Action accruing to the Debtor except the following: (a) the Adversary Proceeding; and (b) collection of accounts receivables in the ordinary course of business, including any rights and Claims appurtenant thereto.

### ARTICLE XI.
### TAX IMPLICATIONS OF THE PLAN

A. **As to Claimholders**: The tax consequences of the implementation of the Plan to a specific Creditor will depend on a number of factors, including whether the Holder's Claim constitutes a "security" for federal income tax purposes, whether a Creditor has already taken a deduction of loss with respect to its Claim and the timing of any distributions under the Plan. It is possible that certain Holders will recognize gain or income as a result of distributions under the Plan. There also may be state, local, or foreign tax considerations applicable to particular Holders of Claims, none of which are discussed herein. **Each holder of a Claim or any other party in interest in this case is strongly urged to consult with their tax advisor regarding the federal, state, and local income and other tax consequences that the implementation of this Plan may have on them.**

B. **As to the Reorganized Debtor:** As of fiscal year-end December 31, 2019, the Debtor realized net operating losses of $107,411.00. The Reorganized Debtor is entitled to carry the net operating losses over. Although the Reorganized Debtor will be able to sustain its

operations with positive cash flow, no profit will likely be realized until at least three years post confirmation of the Plan, and only in such modest amounts as to likely result in no net taxable income to the Debtor that cannot be offset by the carried over net operating losses.

## ARTICLE XII.
## LIQUIDATION ANALYSIS

A plan proponent must demonstrate as a condition of confirmation, that each Impaired Class of Claimholders will receive as much as it would receive in a Chapter 7 proceeding. A plan proponent must also demonstrate that the plan is "feasible," i.e., that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.

Under Section 1129(a)(7) of the Bankruptcy Code, the Plan must provide that Claimholders receive as much or more under the Plan than they would receive in a Chapter 7 liquidation of the Debtor. The Debtor asserts that all Claimholders will receive more under the Plan than they would in liquidation. Attached as "**Exhibit C**" is the Debtor's Schedule B, which shows that, as of the Petition Date, the Debtor's assets had an approximate value of $1,515,109.42. A significant amount of the accounts receivable is aged, disputed, and deemed uncollectible. As of the date of this document, the Debtor believes the following assets would be available[5] to a Chapter 7 Trustee for liquidation in the event of a conversion:

| | | |
|---|---|---|
| (1) Cash on hand: | $ | 17,279.00 |
| (2) Accounts Receivable: | $ | 1,501,979.00 |
| (3) Inventory: | $ | 3,000.00 |
| (4) Furniture, Fixtures, and Equipment: | $ | 1,190.00 |

---

[5](All rounded up to the nearest dollar)

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

(5) Claim against FL AHCA:                          Unknown[6].

As is evident from comparing the value of the assets with the Claims, Claimholders will receive more under the Plan than they would receive in a hypothetical Chapter 7. If the Debtor were to be liquidated through Chapter 7, General Unsecured Creditors would receive nothing. The Debtor submits this liquidation analysis in order to satisfy the best interest of creditors test set forth in 11 U.S.C. § 1129(a)(7).  If this case were to be converted to Chapter 7, a trustee would be appointed to marshall and liquidate the assets of the Debtor. A trustee would, in all likelihood, retain counsel, which would add additional administrative expenses.  Substantial fees could be incurred in obtaining familiarity with the Debtor's financial dealings already obtained by professionals retained by the Debtor in connection with the Chapter 11 proceedings. In all likelihood, the trustee would not operate the business of the Debtor. The trustee would be charged with liquidating accounts receivables and other assets for distribution to Claimholders. The Debtor believes that upon liquidation, the Estate would not receive assets sufficient to exceed the proposed distributions under the Plan.  Accordingly, the Debtor submits that General Unsecured Creditors stand to gain more benefit from Confirmation of the Plan than they would in a Chapter 7 liquidation of the Debtor.

### ARTICLE XIII.
### MISCELLANEOUS

**A.** *Modification*

The Debtor reserves the right to revoke or withdraw the Plan in its sole discretion, at any time before the Confirmation Date, or, if for any reason the Plan cannot be consummated after the Confirmation Date, at any time up to and including the Effective Date.  If the Plan is

---

[6] Any engagement by a Chapter 7 Trustee to sue AHCA would likely be 100% contingency-based.



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

revoked and withdrawn, then (a) nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or to prejudice in any manner the rights of any person in any further proceedings in the Chapter 11 Case or otherwise; and, (b) any provision of the Confirmation Order shall be null and void and all such rights of or against the Estate shall exist as though the Plan had not been filed and no actions were taken to effectuate it.

Debtor may modify the Plan, in its sole discretion, either pre- or post-confirmation in accord with the Bankruptcy Code, or, if for any reason the Plan cannot be consummated after the Confirmation Date, at any time up to and including the Effective Date.

### B.    *Confirmation Order Controls*

To the extent the Disclosure Statement is inconsistent with the Plan, the Plan shall control.  To the extent that the Plan, the Disclosure Statement, or any agreement entered into between or among the Debtor and any third party is inconsistent with the Confirmation Order, the Confirmation Order shall control.

### C.    *Effectuating Documents and Further Transactions.*

The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases and other agreements, and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  Debtor's counsel shall have no continuing duties post-confirmation other than to make the distributions required on the Effective Date unless otherwise agreed to by the Reorganized Debtor and counsel.

### D.    *Substantial Consummation of the Plan.*

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

Pursuant to the terms of the Plan, the Debtor believes that the Plan shall be deemed to be substantially consummated under 11 U.S.C. § 1101 on the Effective Date.

**E.**    ***Terms of the Plan are Binding.***

Pursuant to Section 1141 of the Bankruptcy Code, the Plan and all of its terms, when approved and confirmed by the Bankruptcy Court, shall be binding upon, including, without limitation, the Debtor, the Debtor's Estate, all holders of Claims, Allowed or not, and their respective successors and assigns.

If, after the Confirmation Date, any term or provision of this Plan is determined to be unenforceable, the remaining terms and provisions of this Plan shall nonetheless continue in full force and effect.

**F.**    ***Taxes.***    The issuance, transfer or exchange of a security or the making or delivery of an instrument of transfer under this Plan, if any, including the execution or recording of any mortgage modification, security agreement and related note, shall be deemed to be free of any tax under any law imposing a stamp or similar tax pursuant to Section 1146(c) of the Bankruptcy Code.

## ARTICLE XIV.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction of these proceedings after the Confirmation Date of this Plan until the entry of the final decree pursuant to Bankruptcy Rule 3022 for the following purposes:

A.    To enable the Debtor and the Reorganized Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

B.      To enable the Debtor and the Reorganized Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

C.      To determine all controversies relating to or concerning the classification, subordination, allowance, valuation, or satisfaction of Claims;

D.      To liquidate or estimate for purposes of allowance all contested, contingent, or unliquidated Claims;

E.      To determine the validity, extent, and priority of all liens, if any, against property of the Estate;

F.      To determine all assertions or an ownership interest in, the value of, or title to, any property of the Estate;

G.      To determine all applications for compensation and reimbursement and objections to Administrative Claims;

H.      To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all Claims or causes of action asserted by the Debtor;

I.      Without limiting the generality of the preceding paragraph, to determine any avoidance action brought by the Debtor;

J.      To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

K.      To enforce all agreements assumed, if any, and to recover all property of the Estate, wherever located;

L.      To determine any tax liability of the Estate in connection with the Plan, actions taken, distributions, or transfers made thereunder;

59



M.      To enforce any and all releases and injunctions created pursuant to the terms of the Plan;

N.      To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

O.      To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

P.      To make such orders as are necessary or appropriate to carry out the provisions of the Plan; and

Q.      To enter a Final Decree pursuant to Bankruptcy Rule 3022.

## ARTICLE XV.
## RECOMMENDATION OF CONFIRMATION

The Debtor believes that Confirmation of the Plan is in the best interests of the creditors and the Estate because confirmation of the Plan will enable Claimholders to receive higher distributions under the Plan than they would in the event the case were converted to Chapter 7, and will further result in the emergence of a viable Reorganized Debtor.  Therefore, the Debtor urges all holders of Impaired Claims to cast a Ballot voting in favor of the Plan on or before _____2020.

Respectfully submitted on September 8, 2020

By:   _/s/ Sofia Aneas_____
            Sofia Aneas
            President of Children First Consultants, Inc.

By:   _/s/ Nicole Grimal Helmstetter_____
            Nicole Grimal Helmstetter, Esq.
            Attorneys for the Plan Proponent

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

Florida Bar Number 86937

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

# Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*                                          Case No.: 19-25286-RAM

CHILDREN FIRST CONSULTANTS,          Chapter 11
INC.,

_____Debtor._____ /

# PLAN OF REORGANIZATION OF

# CHILDREN FIRST CONSULTANTS, INC.

**Submitted on September 8, 2020 by:**

**AGENTIS PLLC**
**55 Alhambra Plaza, Suite 800**
**Coral Gables, Florida  33134**
**T. 305.722.2002      F. 305.722.2001**
**Nicole Grimal Helmstetter**
**Fla. Bar No. 86937**
**ngh@agentislaw.com**
***Attorneys for the Debtor in Possession***

## TABLE OF CONTENTS

**ARTICLE I.          DEFINITIONS** ........................................................................ 1

   **1.1.**   **Administrative Claim** .................................................................... 1

   **1.2.**   **Administrative Claims Bar Date** ............................................... 1

   **1.3.**   **Administrative Expenses** ............................................................ 2

   **1.4.**   **Adversary Proceeding** ................................................................ 2

   **1.5.**   **AHCA** ............................................................................................ 2

   **1.6.**   **Allow, Allowed, Allowance** ......................................................... 2

   **1.7.**   **Allowed Administrative Expense Claim** .................................... 2

   **1.8.**   **Allowed Claim** .............................................................................. 2

   **1.9.**   **Allowed Unsecured Claim** .......................................................... 3

   **1.10.**  **Assets** ............................................................................................ 3

   **1.11.**  **Avoidance Action** ........................................................................ 3

   **1.12.**  **Ballot** ............................................................................................ 3

   **1.13.**  **Bankruptcy Code** ........................................................................ 3

   **1.14.**  **Bankruptcy Court** ....................................................................... 3

   **1.15.**  **Bankruptcy Rules** ....................................................................... 4

   **1.16.**  **Cause(s) of Action** ...................................................................... 4

   **1.17.**  **Chapter 11 Case** .......................................................................... 4

   **1.18.**  **Claim** ............................................................................................. 4

   **1.19.**  **Claimant, Claimholder or Creditor** .......................................... 4

   **1.20.**  **Claimholder** ................................................................................. 4

   **1.21.**  **Claims Bar Date** .......................................................................... 4

   **1.22.**  **Class** .............................................................................................. 4

   **1.23.**  **Confirmation or Confirmation Date** ......................................... 4

   **1.24.**  **Confirmation Hearing** ................................................................ 5

   **1.25.**  **Confirmation Order** .................................................................... 5

   **1.26.**  **Court** ............................................................................................. 5

   **1.27.**  **Cramdown Provisions** ................................................................. 5

   **1.28.**  **Creditor** ........................................................................................ 5

**agentis**
Legal Advocates & Advisors

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

1.29. **Debtor** ...................................................................................................................... 5

1.30. **Directors** .................................................................................................................. 5

1.31. **Disclosure Statement** ............................................................................................. 5

1.32. **Disputed Claim** ....................................................................................................... 6

1.33. **Disputed Creditors** ................................................................................................. 6

1.34. **Earn Out From Operations** ................................................................................... 6

1.35. **Effective Date** .......................................................................................................... 6

1.36. **Estate** ........................................................................................................................ 6

1.37. **Equity Interest** ........................................................................................................ 6

1.38. **Executory Contracts** ............................................................................................... 6

1.39. **Final Order** ............................................................................................................. 6

1.40. **General Unsecured Claim** ...................................................................................... 7

1.41. **Governmental Unit** ................................................................................................. 7

1.42. **Holder** ...................................................................................................................... 7

1.43. **Impaired** .................................................................................................................. 7

1.44. **Insiders** .................................................................................................................... 7

1.45. **Litigation Proceeds** ................................................................................................ 7

1.46. **Local Rules** .............................................................................................................. 7

1.47. **Monthly Operating Reports** .................................................................................. 7

1.48. **Petition Date** ........................................................................................................... 8

1.49. **Plan** .......................................................................................................................... 8

1.50. **Plan Fund** ................................................................................................................ 8

1.51. **Plan Payment** .......................................................................................................... 8

1.52. **Priority Cap** ............................................................................................................ 8

1.53. **Priority Claim** ......................................................................................................... 8

1.54. **Professional** ............................................................................................................. 8

1.55. **Professional Claim** .................................................................................................. 8

1.56. **Proponent** ................................................................................................................ 8

1.57. **Reorganized Debtor** ............................................................................................... 9

1.58. **Scheduled** ................................................................................................................ 9

iii

1.59. Schedules or Amended Schedules or Schedules of Assets and
Liabilities or Statement of Financial Affairs ................................................. 9

1.60. Solicitation Procedures Order.................................................................... 9

1.61. United States Trustee .................................................................................. 9

1.62. United States Trustee Fees .......................................................................... 9

1.63. Voting Deadline ........................................................................................... 9

1.64. Uncontested Receivable .............................................................................. 9

1.65. WellCare .................................................................................................... 9

1.66. Undefined Terms ........................................................................................ 9


ARTICLE II.          CLASSIFICATION OF CLAIMS AND INTERESTS ...................... 10


ARTICLE III.         TREATMENT OF CLAIMS AND INTERESTS
                     UNDER THE PLAN ....................................................................... 10

General Matters Regarding Classification and Treatment of Claims ............................... 10

3.1.  Administrative Expense Claims ...................................................................... 10

3.2   Class 1. Allowed Wage Claims. ...................................................................... 11

3.3.  Class 2. Allowed General Unsecured Claims.................................................... 11

3.4.  Class 3. Equity Interests of the Directors........................................................ 12

3.5.  Impaired Classes. .......................................................................................... 12


ARTICLE IV.          ACCEPTANCE OR REJECTION OF PLAN .................................. 12

4.1.  Voting Classes. .............................................................................................. 12

4.2.  Presumed Acceptance of Plan. ....................................................................... 12


ARTICLE V.           FUNDING AND IMPLEMENTATION OF THIS PLAN .................. 12

5.1.  Vesting of Property of the Estate. ................................................................... 12

5.2.  The Plan Fund. ............................................................................................. 12

5.3.  Sources of Funding Plan Payments. ............................................................... 13

5.4   Events Occurring on or Before Confirmation.................................................. 14

5.5.  Events Occurring on or after the Effective Date ............................................. 14

5.6.  Documents ................................................................................................... 14

iv

**5.7.**    **Payments** ......................................................................................... 15

**5.8.**    **Causes of Action** ............................................................................. 15

**5.9.**    **Reservation of Rights Under Section 1129(b)** ................................ 16

**5.10.**   **No Waiver of Claims** ...................................................................... 16

**5.11.**   **Disputed Claims** ............................................................................. 17

**5.12.**   **Delay of Distribution on a Disputed Claim** .................................. 17

**5.13.**   **Settlement of Disputed Claims** ...................................................... 17

**5.14.**    **Post-Effective Date Fees and Expenses** ...................................... 17

**5.15.**   **Determination of Tax Liability** ..................................................... 17

**ARTICLE VI.**     **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................................... 18

**6.1.**    **Rejected Executory Contracts and Unexpired Leases.** .................. 18

**ARTICLE VII.**     **REQUEST FOR CONFIRMATION UNDER 11 U.S.C. § 1129(B)** ... 18

**ARTICLE VIII.**    **GENERAL PROVISIONS** ................................................. 18

**8.1.**    **Definitions and Rules of Construction** ........................................... 18

**8.2.**    **Effective Date of Plan** ..................................................................... 18

**8.3.**    **Severability.** .................................................................................... 19

**8.4.**    **Binding Effect** ................................................................................ 19

**8.5.**    **Captions.** ........................................................................................ 19

**8.6.**    **Controlling Effect** .......................................................................... 19

**ARTICLE IX.**     **DISCHARGE, RELEASES, AND INJUNCTIONS** ........................... 19

**9.1.**    **Discharge of Debt.** ......................................................................... 19

**9.2.**    **Releases** ......................................................................................... 19

**9.3.**    **Injunction** ....................................................................................... 20

**ARTICLE X.**     **RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT** ................................................... 20

**ARTICLE XI.**     **MODIFICATIONS TO THE PLAN** ..................................... 21

v

**ARTICLE XII      AMENDMENT OF CLAIMS**................................................................. **22**

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

# PLAN OF REORGANIZATION

CHILDREN FIRST CONSULTANTS, INC. (the "**Debtor**" or "**Children First**"), by and through undersigned counsel, submits and proposes the following Plan of Reorganization pursuant to 11 U.S.C. § 1121(b):

## ARTICLE I.
## DEFINITIONS

Except as otherwise provided in this Plan, all terms used herein shall have the meanings ascribed to such terms under the Bankruptcy Code, as amended, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of Florida (the "**Local Rules**"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. The capitalized terms set forth below when used in this Disclosure Statement and Plan of Reorganization shall have the following meanings:

1.1. "**Administrative Claim**" shall mean a Claim for payment of costs or expenses of administration specified in Sections 503(b) and 507(a)(1) of the Bankruptcy Code, incurred after the Petition Date through the Confirmation Date, including without limitation: (i) the actual, necessary costs and expenses of preserving the Debtor's Estate incurred after the Petition Date; (ii) compensation for legal, accounting and other services and reimbursement of expenses awarded pursuant to Sections 330(a) or 331 of the Bankruptcy Code; and, (iii) all fees and charges assessed against the Debtor's Estate pursuant to Section 1930 of Title 28 of the United States Code.

1.2. "**Administrative Claims Bar Date**" shall mean the date which occurs thirty (30) days from the Confirmation Date as the last date to request payment of Administrative Claims, other than with respect to Professional Claims.



1.3.     "**Administrative Expenses**" shall mean any Claim for payment of costs or expenses of administration specified in Sections 503(b) and 507(a)(1) of the Bankruptcy Code, incurred after the Petition Date through the Confirmation Date, including without limitation: (i) the actual, necessary costs and expenses of preserving the Debtor's Estate incurred after the Petition Date; (ii) Professional Claims; and (iii) all fees and charges assessed against the Debtor's Estate pursuant to Section 1930 of Title 28 of the United States Code.

1.4.     "**Adversary Proceeding**" shall mean the adversary proceeding commenced on June 2, 2020, by the Debtor upon the filing of a three count complaint against the Florida Agency for Health Care Administration wherein the Debtor requested turnover of $831,128.28 of uncontested receivables as property of the Estate.

1.5.     "**AHCA**" shall mean Agency of Healthcare Administration.

1.6.     "**Allow**," "**Allowed**," "**Allowance**" or words of similar meaning shall mean with respect to a Claim against the Debtor's Estate:  (i) that no objection has been interposed within the applicable period of limitation fixed by this Plan or by the Bankruptcy Court and that such period of limitation has expired; or (ii) that the Claim has been allowed for purposes of payment by an order of the Bankruptcy Court that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending.

1.7.     "**Allowed Administrative Expense Claim**" shall mean an Allowed Claim for which a Claimant asserts, and that is determined to be entitled to, priority under Sections 503 and 507(a)(1) and (a)(2) of the Bankruptcy Code, other than Administrative Claims.

1.8.     "**Allowed Claim**" shall mean a Claim against the Debtor (i) allowed by a Final Order, (ii) Scheduled as liquidated, undisputed and non-contingent by the Debtor in their Schedules of Assets and Liabilities filed with the Bankruptcy Court, as they may be amended or

2

supplemented) or (iii) timely filed with the Clerk of the Bankruptcy Court and to which no objection has been made to the allowance thereof within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim.

1.9.    **"Allowed Unsecured Claim"** shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court.

1.10.    **"Assets"** shall mean the aggregate assets, of any kind, of the Debtor and its Estate as more specifically defined in section 541 of the Bankruptcy Code.

1.11.    **"Avoidance Action"** shall mean potentially avoidable transfers pursuant to 11 U.S.C. §§ 544, 547, 548, and 549.

1.12.    **"Ballot"** shall mean the Ballot accompanying this Plan or Order Approving the Disclosure Statement, upon which holders of Impaired Claims entitled to vote on this Plan shall indicate their acceptance or rejection of his Plan in accordance with the instructions regarding voting.

1.13.    **"Bankruptcy Code"** (the **"Code"**) shall mean Title 11 of the  United States Code, which governs the Chapter 11 Case of the Debtor.

1.14.    **"Bankruptcy Court"** (the **"Court"**) shall mean the United States Bankruptcy Court for the Southern District of Florida, Miami Division, or any other court exercising

3

competent jurisdiction over the Chapter 11 Case or any proceeding arising in or related to the Chapter 11 Case.

    **1.15.** "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida), as now in effect or hereafter amended.

    **1.16.** "**Cause(s) of Action**" shall mean any and all causes of action to recover funds for the benefit of the Estate.

    **1.17.** "**Chapter 11 Case**" or this "**Case**" shall mean the proceeding under Chapter 11 of the Bankruptcy Code under case number 19-25286-BKC-RAM.

    **1.18.** "**Claim**" shall have the meaning provided for such term in Section 101(5) of the Bankruptcy Code.

    **1.19.** "**Claimant**," "**Claimholder**" or "**Creditor**" shall mean the holder of a Disputed Claim or Allowed Claim, as the case may be.

    **1.20.** "**Claimholder**" shall mean a creditor of the Estate whose Claim is not a Disputed Claim and who is entitled to vote on the Plan.

    **1.21.** "**Claims Bar Date**" shall mean March 16, 2020, which is the date set by the Bankruptcy Court as the last day for filing a proof of Claim for all creditors except a governmental unit against the Debtor.

    **1.22.** "**Class**" shall mean a group of Claims or Interests consisting of Claims or Interests which are substantially similar to each other as classified pursuant to the Plan in accordance with Section 1122 of the Bankruptcy Code.

    **1.23.** "**Confirmation**" or "**Confirmation Date**" shall mean the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

4



1.24. "**Confirmation Hearing**" shall mean the hearing conducted by the Bankruptcy Court under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

1.25. "**Confirmation Order**" shall mean the Final Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.26. "**Court**" shall mean the United States Bankruptcy Court Southern District of Florida, Miami Division.

1.27. "**Cramdown Provisions**" shall mean in the event that any Impaired Class of Claimholders with Claims against the Debtor fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code.

1.28. "**Creditor**" shall mean any person or entity that is a holder of a Claim against the Debtor.

1.29. "**Debtor**" shall mean CHILDREN FIRST CONSULTANTS, INC..

1.30. "**Directors**" shall mean (i) Sofia Aneas, LMHC, BCBA, (ii) Oxana Garkavchenko, LMHC, BCBA and (iii) Yudelkys San Juan Machin, BCBA, each owning a 33.3% equity interest in the Debtor.

1.31. "**Disclosure Statement**" shall mean the Disclosure Statement for the Plan of Reorganization proposed by Debtor pursuant to Section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified or supplemented from time to time (and all exhibits and schedules attached thereto or referred to therein).

5

**1.32.** "**Disputed Claim**" shall mean: (i) a liability scheduled on the Schedules or the Amended Schedules as disputed, contingent or unliquidated; or, (ii) a timely filed proof of Claim against which an objection is pending, or is filed within the deadline provided in this Plan and which Claim has not been Allowed by order of the Bankruptcy Court.

**1.33.** "**Disputed Creditors**" shall refer to those Creditors with disputed Claims that have been so designated on Schedule F.

**1.34.** "**Earn Out From Operations**" shall mean the net disposable income of the Debtor for the full fiscal year following the first distribution under the Plan after payment of all ordinary course of business expenses and the establishment of a reserve for three months of operations.

**1.35.** "**Effective Date**" shall mean the date on which distributions to Creditors shall commence after the entry of the Confirmation Order. The Effective Date in this case shall take place thirty (30) days after the entry of the Confirmation Order.

**1.36.** "**Estate**" shall mean the Estate created by Section 541 of the Bankruptcy Code upon the Debtor's filing of the Petition with the Bankruptcy Court in this Proceeding.

**1.37.** "**Equity Interest**" shall mean a share of stock, warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest in the Debtor, as more specifically defined in Section 101(16) of the Bankruptcy Code.

**1.38.** "**Executory Contracts**" shall mean all contracts, oral or written, to which the Debtor is a party and which are executory within the meaning of Section 365 of the Bankruptcy Code.

**1.39.** "**Final Order**" shall mean an order or judgment of the Bankruptcy Court that is appealable of right to the United States District Court for the Southern District of Florida

6



pursuant to Section 158(a) of Title 28, United States Code, whether or not an appeal can be timely taken, is taken, or is pending, unless the order is stayed pending appeal, and whether or not a timely motion is filed under Bankruptcy Rules 7052(b) or 9023.

**1.40.** "**General Unsecured Claim**" shall mean any Claim against the Estate of the Debtor other than an Administrative Claim or a Priority Claim.

**1.41.** "**Governmental Unit**" shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

**1.42.** "**Holder**" shall mean a creditor of the Estate whose Claim is not a Disputed Claim and who is entitled to vote on the Plan.

**1.43.** "**Impaired**" shall mean that the Holder of such Allowed Claim will not receive a one hundred (100%) percent distribution on account of such Claim.

**1.44.** "**Insiders**" shall have the meaning given such term in Section 101(31)(B) of the Bankruptcy Code: (i) a director of the debtor; (ii) an officer of the debtor; (iii) a person in control of the debtor; (iv) a partnership in which the debtor is a general partner; (v) a general partner of the debtor; or (vi) a relative of a general partner, director, officer, or person in control of the debtor.

**1.45.** "**Litigation Proceeds**" shall mean the expected proceeds of the litigation to recover accounts receivable which are expected to arrive in two segments; first from the payment of Claims by AHCA and second, from Wellcare.

**1.46.** "**Local Rules**" " shall mean the Local Bankruptcy Rules for the Southern District of Florida.

**1.47.** "**Monthly Operating Reports**" " shall mean the small business debtor monthly operating reports filed by the Debtor in the Chapter 11 Case.

7



**1.48.** "**Petition Date**" shall mean the date that the voluntary petition was filed in this Case, which date was November 13, 2019.

**1.49.** "**Plan**" shall mean Debtor's Plan of Reorganization in its entirety, together with all addenda, exhibits, schedules and other attachments thereto, in its present form or as it may be modified, amended or supplemented from time to time.

**1.50.** "**Plan Fund**" shall mean such sums available for payment of Allowed Claims under this Plan.

**1.51.** "**Plan Payment**" shall mean disbursements contemplated in the Plan.

**1.52.** "**Priority Cap**" shall mean the maximum wage amount described in Section 507(a)(4) of $13,650.00.

**1.53.** "**Priority Claim**" shall mean a Claim entitled to priority under Section 507(a)(9) of the Bankruptcy Code.

**1.54.** "**Professional**" shall mean a person or entity (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Section 327, 328, or 1103 or otherwise of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.55.** "**Professional Claim**" shall mean the Claim of any legal counsel, accountant, consultant, financial advisor, or other Professional entitled to such Claim pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered before the Effective Date.

**1.56.** "**Proponent**" shall mean the Debtor.

8



**1.57.** "**Reorganized Debtor**" shall mean the Debtor in its restructured and reorganized form as of the entry of the Confirmation Order.

**1.58.** "**Scheduled**" shall mean as set forth in the Debtor's Schedules of Assets and Liabilities.

**1.59.** "**Schedules**" or "**Amended Schedules**" or "**Schedules of Assets and Liabilities**" or "**Statement of Financial Affairs**" shall mean the Schedules and any Amended Schedules filed or which may be filed by the Debtor in this Chapter 11 Case.

**1.60.** "**Solicitation Procedures Order**" " shall mean the order which sets forth the solicitation procedures in this Chapter 11.

**1.61.** "**United States Trustee**" shall mean the Assistant United States Trustee for the Southern District of Florida.

**1.62.** "**United States Trustee Fees**" shall mean the quarterly fee payments due under 28 U.S.C. § 1930(a)(6), to be paid to the United States Trustee System Fund at Treasury in each case under chapter 11 (except small business cases under Subchapter V of chapter 11) for each calendar quarter, or portion thereof, between the date a bankruptcy petition is filed and the date the court enters a final decree closing the case, dismisses the case, or converts the case to another chapter in bankruptcy.

**1.63.** "**Voting Deadline**" shall mean _____, 2020 5:00 p.m. Eastern Daylight Time.

**1.64.** "**Uncontested Receivable**" shall mean $831,128.28 of uncontested receivables owed by AHCA which are the subject of the Adversary Proceeding.

**1.65.** "**Wellcare**" shall mean Wellcare Health Plans, Inc.

**1.66.** "**Undefined Terms**" shall mean that a term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein.



55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

    2.1    All Claims against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Debtor or rejection of executory contracts and/or unexpired leases, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan. With the exception of Administrative Claims, which are unclassified pursuant to 11 U.S.C. § 1123(a)(1), Claims against the Debtor is classified as follows:

| CLASS | CLASS DESCRIPTION | IMPAIRMENT | VOTE ENTITLEMENT |
|---|---|---|---|
| Unclassified | Allowed Administrative Expense Claims, including Professionals Claims, for costs or expenses of administering the Debtor's case, which are allowed under Section 503(b) of the Bankruptcy Code and fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee that were incurred during the course of the case. | Unimpaired | Not entitled to vote |
| Class 1 | Allowed Wage Claims | Impaired | Entitled to vote |
| Class 2 | Allowed General Unsecured Claims | Impaired | Entitled to vote |
| Class 3 | Equity Interests of the Directors | Unimpaired | Not entitled to vote |

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

    **General Matter Regarding Classification and Treatment of Claims.**    Except to the extent the holder of an Allowed Claim or Allowed Interest against the Debtor agrees to accept different but lesser treatment, the treatment of Allowed Claims and Allowed Interests shall be as follows:

    **3.1.**    **Administrative Expense Claims.**  Each holder of an Allowed Administrative Expense Claim under § 503 of the Code will be paid upon receipt of the potential Litigation

10

Proceeds arising out of the Debtor's demand for payment of accounts receivable asserted against the Agency for Healthcare Administration of Florida ("**AHCA**"). Should the Reorganized Debtor chose to proceed to a second round of litigation against AHCA and/or Wellcare Health Plans, Inc. ("**Wellcare**"), a sufficient amount of the Litigation Proceeds, to be determined at that time, shall be set aside to fund actual projected litigation expenses. All Administrative Expense Claims incurred in the ordinary course of the Debtor's business, including without limitation, employee wages, utilities, and taxes, shall be paid by the Debtor or Reorganized Debtor in the ordinary course of business pursuant to customary terms and due dates.

3.2.    **Class 1.    Allowed Wage Claims.** In light of their material and substantial contribution to the Debtor's business operations and going concern value, the Debtor shall treat the Claims of its independent contractors as Priority Claims commensurate with the wage Claims of the Debtor's W-2 employees. Consistent with Section 507(a)(4), the Allowed Wage Claims shall receive a pro rata distribution in an amount of up to 100% of $13,650.00 (the "**Priority Cap**").  Any holders of Allowed Wage Claims whose total allowed Claim exceeds the Priority Cap shall participate in distributions to Class 2 Allowed General Unsecured Claims. **Class 1 is Impaired and Claimants other than Insiders are entitled to vote.**

3.3.    **Class 2.    Allowed General Unsecured Claims.**   After payment of allowed Administrative Expense Claims and Class 1 Allowed Wage Claims, Allowed General Unsecured Claims (including Allowed Wage Claims above the Priority Cap) shall receive a pro rata distribution from the balance of the Plan Fund. **Class 2 is Impaired and Claimants other than Insiders are entitled to vote.**

11

**3.4.** **Class 3. <u>Equity Interests of the Directors.</u>** Class 3 consists of the equity interests in the Debtor, which are owned by the Directors and are retained under the Plan. **Class 3 Claimants are unimpaired and not entitled to vote.**

**3.5.** **Impaired Classes.** The following classes are Impaired and entitled to vote on the Plan: Class 1 and Class 2.

**ARTICLE IV.**
**<u>ACCEPTANCE OR REJECTION OF PLAN</u>**

**4.1.** **<u>Voting Classes.</u>** Each holder of an Allowed Claim in Class 1 and 2 shall be entitled to vote to accept or reject this Plan.

**4.2.** **<u>Presumed Acceptance of Plan.</u>** Class 3 is conclusively presumed to have accepted this Plan or are otherwise not entitled to vote.

**ARTICLE V.**
**<u>FUNDING AND IMPLEMENTATION OF THIS PLAN</u>**

**5.1.** **<u>Vesting of Property of the Estate.</u>** On the Effective Date, property of the Debtor, not otherwise disposed of under the Plan, shall vest with the Reorganized Debtor.

**5.2.** **<u>The Plan Fund</u>.** The Plan shall be funded from the following sources (the "**Plan Fund**"): (a) recoveries obtained from the Litigation Proceeds after payment of Allowed Administrative Claims and a set aside of a reserve for litigation costs in the event that the Reorganized Debtor elects to proceed with further litigation against AHCA or Wellcare, and (b) an "earn out" distribution from the Debtor's operations after the first full fiscal year that follows the year in which the first distributions under the Plan are made (the "**Earn Out From Operations**"). The term "Earn Out From Operations" shall mean the net disposable income of the Debtor for the full fiscal year following the first distribution under the Plan after

12

payment of all ordinary course of business expenses and the establishment of a reserve for three months of operations.

     **5.3.**   **Sources of Funding Plan Payments.** The Plan Fund shall be funded through two sources (i) the Litigation Proceeds and (ii) an Earn Out From Operations. The Earn Out From Operations component will arise out of the Debtor's provision of services to clients enrolled in private insurance plans, including but not limited to; Cigna, Aetna, Florida Blue, Tricare and United Healthcare. The Litigation Proceeds are expected to arrive in two segments; first from the payment of Claims by AHCA and second, from Wellcare. The anticipated payout of Litigation Proceeds from the litigation against AHCA is expected to be sufficient to satisfy Allowed Administrative Expense Claims, Allowed Wage Claims, establish a working capital reserve and fund a small portion of the Class 2 General Unsecured Claims. The second round of litigation with Wellcare is expected to provide an additional payment to Class 2 General Unsecured Claims. For illustrative purposes, if the Debtor recovers $1 million of Litigation Proceeds, approximately 50% of that amount shall be used to satisfy Allowed Administrative Expense Claims.[1] The remaining $500,000.000 shall be used first to satisfy Class 1 Allowed Wage Claims up to the priority amount with the balance paid to Class 2 Allowed General Unsecured Claims, after the establishment of a working capital reserve. The Reorganized Debtor, as reorganized, will retain and will be vested in all property of the Estate, excepting property which is to be disposed of as provided herein and executory contracts which are rejected pursuant to this Plan. Sofia Aneas will continue as President of the Reorganized Debtor. The retained Estate property shall be used by the Debtor in the ordinary course of its

---

[1] Special Litigation Counsel, Christopher David, Esq's employment was approved on a contingency fee basis in the amount of 35%. The law firm of Agentis, General Counsel for the Debtor, has not yet filed a fee application in this matter and has not otherwise received compensation for its services at this time.

13



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

business, which will continue to be the operation of the corporation providing behavioral analysis services to children with developmental disabilities, including but not limited to; autism, down syndrome, attention deficit hyperactivity disorder (ADHD), depression, anxiety and other conduct and behavioral issues in its present form, or as may be expanded or modified in the business judgment of the Reorganized Debtor.

**5.4.**    **Events Occurring on or Before Confirmation.**    The following events shall occur on or before the Confirmation Date: the Debtor shall continue to operate its business, provide behavioral analysis services to clients and collect payments for services rendered in the ordinary course of its business.  The Debtor shall also commence litigation in the Circuit Court of Leon County against AHCA for breach of contract and associated damages. In addition, the Debtor shall continue to comply with the various other orders entered by the Bankruptcy Court during the course of its case.

**5.5.**    **Events Occurring on or after the Effective Date.**    The following events shall occur on or after the Effective Date: the Debtor shall continue operations and shall commence the payments provided for in this Plan. All property of the Debtor and the Debtor's Estate shall vest in the Reorganized Debtor, and the Reorganized Debtor shall continue in the ordinary course of business.

**5.6.**    **Documents.**    All necessary documents for the implementation of this Plan shall be executed and delivered by the Debtor, when possible, on or before the Effective Date.  To the extent that the Debtor or any party in interest herein is unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court.  Upon execution and delivery, all such documents shall be binding on the Debtor and Reorganized Debtor and all other parties subject to such documents.

14

5.7.    **Payments.**  On or as soon as practicable after the Effective Date and upon receipt of the Litigation Proceeds, the Debtor shall commence payment of all amounts required to be paid pursuant to Article III of this Plan.

5.8.    **Causes of Action.**  The Debtor reserves the right to commence or continue to prosecute any and all Causes of Action which are unresolved during the pendency of this Bankruptcy Case. The Debtor has reviewed its books and records and is not aware of any other Claim or Cause of Action accruing to the Debtor, other than the collection of accounts receivable against AHCA and Wellcare, in the ordinary course of business, including any rights and Claims appurtenant thereto. **The Debtor does not have the financial wherewithal to conduct a fulsome Avoidance Action analysis pursuant to Section 544 of the Bankruptcy Code. To the extent any Avoidance Actions exist, the Debtor believes that the targets would likely be the Debtor's current creditors. Accordingly, the Debtor specifically abandons any and all potential Avoidance Actions.**

Except to the extent any rights, Claims, Causes of Action defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Bankruptcy Case: (i) any and all Causes of Action or Claims accruing to the Debtor or the Estate shall remain assets of and vest in the Reorganized Debtor whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Claims or Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and the Debtor does not waive, release, relinquish, forfeit, or abandon (nor shall it be estopped or otherwise precluded or Impaired from asserting) any Claims, Causes of Action, or defenses that constitute property of the Estate.

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

5.9.    **Reservation of Rights under Section 1129(b).**    The Debtor expressly reserves the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request that the Court confirm this Plan if all of the applicable requirements of Section 1129(a) of the Bankruptcy Code have been met, other than those of Section 1129(a)(8).    Section 1129(b) of the Bankruptcy Code provides that the Plan may be confirmed by the Court despite not being accepted by every Impaired Class if (i) at least one Impaired Class of Claim has accepted the Plan, and (ii) the Court finds that the Plan does not discriminate unfairly and is fair and equitable to the rejecting Classes.    Among other things, such a finding would require a determination by the Court that no holder of an Allowed Claim junior to the rejecting Class will receive or retain any property or payment under the Plan.    In connection with such a request the Debtor may seek permission to modify the Plan.    Further, the Debtor reserves the right, pursuant to Section 1126(e) of the Bankruptcy Code, to request that the Court strike any rejection of the Plan by any holder of a Claim where such rejection is not in good faith.

5.10.    **No Waiver of Claims**:    **Neither the failure to list a Claim in the Schedules filed by the Debtor, the failure of the Debtor or any other Person to object to any Claim for purposes of voting, the failure of the Debtor or any other person to object to a Claim or Administrative Expense before Confirmation or the Effective Date, the failure of any person to assert a Claim or Cause of Action before Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of the Debtor or any other person with respect to a Claim or Administrative Expense, other than a legally effective express waiver or release, shall be deemed a waiver or release of the right of the Debtor before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim**

or Administrative Expense, in whole or in part or (b) retain an either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Claim or Cause of Action against the holder of any such Claim.

**5.11.** **Disputed Claims.**  At the time the Debtor distributes payment to a Class in which a member holds a disputed Claim, the Debtor shall deposit into an escrow account the amount to which a disputed Claimant would be entitled if its Claim were allowed in full.  Within thirty (30) days after a disputed Claim becomes an allowed Claim, the *pro rata* distribution which should have been disbursed to that Claimant had such Claim been an allowed Claim on the date of distribution, shall be paid to such Claimant. Once all disputed Claims have been adjudicated, to the extent that the amounts reserved for payment relating to those Claims exceed the amount of such Claims as ultimately allowed, such excess shall be returned to the Reorganized Debtor.

**5.12.** **Delay of Distribution on a Disputed Claim.**  No distribution will be made on account of a disputed Claim unless such Claim is allowed by a final non-appealable order.

**5.13.** **Settlement of Disputed Claims.**  The Debtor will have the power and authority to settle and compromise a disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**5.14.** **Post-Effective Date Fees and Expenses.**  From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of its business be authorized to  pay the reasonable fees and expenses of  Professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**5.15.** **Determination of Tax Liability.**  The Debtor or Reorganized Debtor, as the case may be, may seek determination of any tax liabilities pursuant to 11 U.S.C. § 505.

17



**ARTICLE VI.**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1    Rejected Executory Contracts and Unexpired Leases.** The Debtor has no

unexpired leases, however, the Debtor currently has 89 independent contractor agreements with

therapists. All executory contracts are deemed rejected upon entry of the order confirming this

Plan, unless otherwise expressly assumed. The Debtor reserves the right to file motions for the

assumption at any time prior to the Confirmation Date and to prosecute any such motion to entry

of a Final Order anytime thereafter.

**ARTICLE VII.**
**REQUEST FOR CONFIRMATION UNDER 11 U.S.C. § 1129(B)**

In the event any Impaired class of Claims or Interests does not accept the Plan, the

Debtor requests that the Court nevertheless confirm its Plan under the provisions of 11 U.S.C. §

1129(b).

**ARTICLE VIII.**
**GENERAL PROVISIONS**

**8.1.    Definitions and Rules of Construction.** The definitions and rules of

construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined

or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the

definitions in Article I.

**8.2.    Effective Date of Plan.** The effective date of this Plan is thirty (30) days

following the date of the entry of the Confirmation Order (the "**Effective Date**"). However, if a

stay of the Confirmation Order is in effect on that date, the Effective Date will be the first

business day after that date on which no stay of the Confirmation Order is in effect, provided that

the Confirmation Order has not been vacated.

18

**8.3.** **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.4.** **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.5.** **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.6.** **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX.
## DISCHARGE, RELEASES, AND INJUNCTIONS

**9.1.** **Discharge of Debt.** Upon the Effective Date, the Debtor shall be fully and completely discharged to the fullest extent permitted by Sections 1141 and 524 of the Bankruptcy Code, from all Claims, debts and liabilities against the Debtor arising before the Effective Date, except as specifically provided for by the Plan.

**9.2.** **Releases.** **As of the Effective Date, except for the Debtor's express obligations respecting distributions herein and Claims reserved by the Debtor to be pursued under the Plan, the Debtor and the Reorganized Debtor are hereby released and discharged from any and all Claims, causes of action, demands, liabilities, losses, damages, whether known or unknown, under federal, state or other law, that arose after the Petition**

19

Date and prior to the Effective Date in connection with any matter arising from or relating to the Debtor.

     **9.3.**    **Injunction.**  Commencing on the Effective Date, all persons who hold or who have held a Claim or Interest in the Debtor shall be permanently enjoined from commencing or continuing any action, employment of process, or act to collect, offset, avoid or recover any Claim against the Debtor, except as otherwise provided under the Plan.

**ARTICLE X.**
**RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT**

     The Bankruptcy Court shall retain jurisdiction of these proceedings after the Confirmation Date of this Plan until the Confirmation Date for the following purposes:

     a.    To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

     b.    To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

     c.    To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

     d.    To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

     e.    To determine the validity, extent and priority of all liens, if any, against property of the Estate;

     f.    To determine all assertions or an ownership interest in, the value of, or title to, any property of the Estate;

     g.    To determine all objections to Administrative Claims;

20



h.  To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all Claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

i.  Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

j.  To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

k.  To enforce all agreements assumed, if any, and to recover all property of the Estate, wherever located;

l.  To determine any tax liability of the Estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

m.  To enforce any and all injunctions created pursuant to the terms of the Plan;

n.  To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

o.  To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

p.  To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

## ARTICLE XI.
## MODIFICATIONS TO THE PLAN

The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date without leave of the Bankruptcy Court. After the Confirmation Date

21

parties- in-interest may, with Bankruptcy Court approval and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

**ARTICLE XII**
**AMENDMENT OF CLAIMS**

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court, unless the Claimant has specifically reserved a right to amend its Claim.

Respectfully submitted on September 8, 2020

By: ___*/s/ Sofia Aneas*_____
      Sofia Aneas
      President of Children First Consultants, Inc.

By: ___*/s/ Nicole Grimal Helmstetter*_____
      Nicole Grimal Helmstetter, Esq.
      Attorneys for the Plan Proponent
      Florida Bar Number 86937

22

# Exhibit "B"

# Southern District of Florida
# Claims Register

## 19-25286-RAM Children First Consultants, Inc.

**Judge:** Robert A Mark     **Chapter:** 11
**Office:** Miami     **Last Date to file claims:** 03/16/2020
**Trustee:**     **Last Date to file (Govt):** 05/11/2020

| Creditor: (95440375)<br>Melinda Clark LLC<br>547 NE 58th street<br>Miami, FL 33137 | Claim No: 1<br>Original Filed Date: 11/26/2019<br>Original Entered Date: 11/26/2019 | Status:<br>Filed by: CR<br>Entered by: admin<br>Modified: |
|---|---|---|

| Amount | claimed: | $13200.00 | | |
|---|---|---|---|---|

*History:*

| Details | | 1-1 | 11/26/2019 | Claim #1 filed by Melinda Clark LLC, Amount claimed: $13200.00 (admin) |
|---|---|---|---|---|

*Description:*

*Remarks:*

| Creditor: (95669738)<br>Magali Martinez Ramirez<br>FairLaw Firm<br>7300 N. Kendall Drive<br>Suite 450<br>Miami, FL 33156 | Claim No: 2<br>Original Filed Date: 04/24/2020<br>Original Entered Date: 04/24/2020 | Status:<br>Filed by: CR<br>Entered by: admin<br>Modified: |
|---|---|---|

| Amount | claimed: | $33377.99 | | |
|---|---|---|---|---|
| Priority | claimed: | $18526.50 | | |

*History:*

| Details | | 2-1 | 04/24/2020 | Claim #2 filed by Magali Martinez Ramirez, Amount claimed: $33377.99 (admin) |
|---|---|---|---|---|

*Description:*

*Remarks:*

| Creditor: (95703428)<br>Polsinelli PC<br>Attn: Accounting Dept/Bankruptcy<br>900 W 48th PL, Suite 900<br>Kansas City, MO 64112 | Claim No: 3<br>Original Filed Date: 05/20/2020<br>Original Entered Date: 05/20/2020 | Status:<br>Filed by: CR<br>Entered by: Henry H Bolz<br>Modified: |
|---|---|---|

| Amount | claimed: | $9288.99 | | |
|---|---|---|---|---|

*History:*

| Details | | 3-1 | 05/20/2020 | Claim #3 filed by Polsinelli PC, Amount claimed: $9288.99 (Bolz, Henry) |
|---|---|---|---|---|

*Description:* (3-1) Legal Services Provided

*Remarks:*

## Claims Register Summary

**Case Name:** Children First Consultants, Inc.
**Case Number:** 19-25286-RAM
**Chapter:** 11
**Date Filed:** 11/13/2019
**Total Number Of Claims:** 3

| Total Amount Claimed* | $55866.98 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

|  | Claimed | Allowed |
|---|---|---|
| **Secured** |  |  |
| **Priority** | $18526.50 |  |
| **Administrative** |  |  |

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/26/2020 09:16:13 | | |
| **PACER Login:** | Agentis1:3197354:5794928 | **Client Code:** 2185.001 |
| **Description:** Claims Register | | **Search Criteria:** 19-25286-RAM Filed or Entered From: 1/1/1990 Filed or Entered To: 8/26/2020 |
| **Billable Pages:** 1 | | **Cost:** 0.10 |

# Exhibit "C"

**Fill in this information to identify the case:**

Debtor name    **Children First Consultants, Inc.**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF FLORIDA

Case number (if known)    **19-25286**

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property     12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |
| 2.    **Cash on hand** | **$0.00** |

3.    **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- | --- |
| 3.1. | **JP Morgan Chase** | **Checking Account** | **7151** | **$8,381.53** |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**                             **$8,381.53**
     Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
| --- | --- |

6. **Does the debtor have any deposits or prepayments?**

   ■ No. Go to Part 3.
   ☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
| --- | --- |

10. **Does the debtor have any accounts receivable?**

   ☐ No. Go to Part 4.
   ■ Yes Fill in the information below.

11.    **Accounts receivable**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Debtor | **Children First Consultants, Inc.** | Case number *(If known)* | **19-25286** |
|--------|-------------------------------------|--------------------------|--------------|
|        | Name                                |                          |              |

| 11a. 90 days old or less: | 193,573.00 | - | 0.00 | = .... | $193,573.00 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11a. 90 days old or less: | 22,259.54 | - | 22,259.54 | = .... | $0.00 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | 1,311,964.89 | - | 0.00 | =.... | $1,311,964.89 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 12. | **Total of Part 3.** | | $1,505,537.89 |
|---|---|---|---|
| | Current value on lines 11a + 11b = line 12. Copy the total to line 82. | | |

**Part 4:    Investments**

**13. Does the debtor own any investments?**

- ■ No.  Go to Part 5.
- ☐ Yes Fill in the information below.

**Part 5:    Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

- ■ No.  Go to Part 6.
- ☐ Yes Fill in the information below.

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

- ■ No.  Go to Part 7.
- ☐ Yes Fill in the information below.

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

- ☐ No.  Go to Part 8.
- ■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. | **Office furniture** | | |
| 40. | **Office fixtures** | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software** **Office Equipment - See attached Exhibit "B-41"** | $1,190.00 | Liquidation | $1,190.00 |

42.    **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

| Debtor | **Children First Consultants, Inc.** | Case number *(If known)* | **19-25286** |
|---|---|---|---|
| | Name | | |

| 43. | **Total of Part 7.** | **$1,190.00** |
|---|---|---|

Add lines 39 through 42. Copy the total to line 86.

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
   ■ No
   ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

<table>
<tr><td>Part 8:</td><td>Machinery, equipment, and vehicles</td></tr>
</table>

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

   ■ No. Go to Part 9.
   ☐ Yes Fill in the information below.

<table>
<tr><td>Part 9:</td><td>Real property</td></tr>
</table>

54. **Does the debtor own or lease any real property?**

   ☐ No. Go to Part 10.
   ■ Yes Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **Month to Month Office Lease**<br>**5246 SW 8th Street, Suite 208-D**<br>**Coral Gables, Florida 33134** | Lessee | $0.00 | N/A | $0.00 |

| 56. | **Total of Part 9.** | **$0.00** |
|---|---|---|

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
   ■ No
   ☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

<table>
<tr><td>Part 10:</td><td>Intangibles and intellectual property</td></tr>
</table>

59. **Does the debtor have any interests in intangibles or intellectual property?**

   ☐ No. Go to Part 11.
   ■ Yes Fill in the information below.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | **Children First Consultants, Inc.** | Case number *(If known)* **19-25286** |
|---|---|---|
| | Name | |

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. **Internet domain names and websites** **Internet Domain Name and Website** www.childrenfirstconsultant.com | $0.00 | | $0.00 |

62.  **Licenses, franchises, and royalties**

63.  **Customer lists, mailing lists, or other compilations**

64.  **Other intangibles, or intellectual property**

65.  **Goodwill**

66.  **Total of Part 10.**

   Add lines 60 through 65. Copy the total to line 89.

   $0.00

67.  **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107)**?**
   ☐ No
   ■ Yes

68.  **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
   ■ No
   ☐ Yes

69.  **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

**Part 11:    All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ■ No.  Go to Part 12.
   ☐ Yes Fill in the information below.

| Debtor | **Children First Consultants, Inc.** | | Case number *(If known)* **19-25286** |
|---|---|---|---|
| | Name | | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $8,381.53 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $1,505,537.89 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $1,190.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.....................................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,515,109.42 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $1,515,109.42 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Items | Quantity | Purchase Price | Actual Value |
|---|---|---|---|
| Office Supplies/File Folders | 230 | $ 940.70 | $ 460.00 |
| File Cabinets | 8 | $ 800.00 | $ 400.00 |
| HP Desktop Computer | 1 | $ 500.00 | $ 150.00 |
| Brother Printer | 1 | $ 299.99 | $ 80.00 |
| Client Storage Cabinet | 1 | $ 399.50 | $ 100.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total: | | $ 2,940.19 | $ 1,190.00 |

# Exhibit "D"

**Fill in this information to identify the case:**

Debtor Name _____

United States Bankruptcy Court for the: _____ District of _____

Case number: _____

☐ Check if this is an amended filing

---

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11     12/17

Month: _____

Line of business: _____

Date report filed: _____
MM / DD / YYYY

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: _____

Original signature of responsible party    *Sofia Areas*

Printed name of responsible party _____

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | | |
| 1. | Did the business operate during the entire reporting period? | ☐ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☐ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☐ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☐ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☐ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☐ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☐ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☐ | ☐ |

Debtor Name _____    Case number_____

17.  Have you paid any bills you owed before you filed bankruptcy?    ☐    ☐    ☐

18.  Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?    ☐    ☐    ☐

## 2. Summary of Cash Activity for All Accounts

19.  **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ _____

20.  **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ _____

21.  **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ _____

22.  **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ _____

23.  **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ _____

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24.  **Total payables**

$ _____

*(Exhibit E)*

Debtor Name _____     Case number_____

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                $ _____

     *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                       _____

27. What is the number of employees as of the date of this monthly report?          _____

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $ _____

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?          $ _____

30. How much have you paid this month in other professional fees?          $ _____

31. How much have you paid in total other professional fees since filing the case?          $ _____

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | *Column A* | | *Column B* | | *Column C* |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ _____ | − | $ _____ | = | $ _____ |
| 33. **Cash disbursements** | $ _____ | − | $ _____ | = | $ _____ |
| 34. **Net cash flow** | $ _____ | − | $ _____ | = | $ _____ |

35. Total projected cash receipts for the next month:                    $ _____

36. Total projected cash disbursements for the next month:            − $ _____

37. Total projected net cash flow for the next month:                     = $ _____

Debtor Name _____    Case number_____

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐   38.   Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐   39.   Bank reconciliation reports for each account.

☐   40.   Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐   41.   Budget, projection, or forecast reports.

☐   42.   Project, job costing, or work-in-progress reports.

# Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*                                                    Case No.: 19-25286-RAM

CHILDREN FIRST CONSULTANTS, INC.,          Chapter 11

_____Debtor._____ /

      Children First Consultants, Inc. has accounts payables that it has not paid, as detailed on

**Exhibit "E."**

# Exhibit "C"

Exhibit C

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 17-Jul | Florida Blue Payment | 604.13 |

# Exhibit "D"

Exhibit D

| DATE | DESCRIPTION | AMOUNT | |
|------|-------------|-------:|--|
| 1-Jul | Recurring Card Purchase 06/30 Amazon Prime*MS23C9Y Amzn.Com/Bill WA Card 1733 $13.09 | $ | 13.09 |
| 2-Jul | Card Purchase 07/02 Google Gsuite_Childre 650-2530000 CA Card 1733 18.00 | $ | 18.00 |
| 3-Jul | Recurring Card Purchase 07/03 Public Storage 00116 800-567-0759 FL Card 0179 76.77 | $ | 76.77 |
| 6-Jul | Recurring Card Purchase 07/03 Dropbox*Cttqkdc2Sbgs 888-4468396 De Card 1733 75.00 | $ | 75.00 |
| 6-Jul | Recurring Card Purchase 07/06 Int*Quickbooks Online 800-446-8848 CA Card 1733 70.00 | $ | 70.00 |
| 13-Jul | Recurring Card Purchase 07/11 Adobe Acropro Subs 408-536-6000 CA Card 1733 24.99 | $ | 24.99 |
| 20-Jul | Website creation payment | $ | 230.00 |
| 22-Jul | Recurring Card Purchase 07/21 His*Hiscox Inc 888-202-3007 NY Card 1733 98.83 | $ | 98.83 |
| 27-Jul | Recurring Card Purchase 07/27 J2 *Myfax Services 877-437-3607 CA Card 1733 10.00 | $ | 10.00 |
| 27-Jul | Recurring Card Purchase 07/25 Google *Google Storag 855-836-3987 CA Card 1733 1.99 | $ | 1.99 |
| 29-Jul | Counter check | $ | 2.00 |
| 31-Jul | Card Purchase 07/30 Fedex 395283636269 Memphis TN Card 1733 38.45 | $ | 38.45 |
| 31-Jul | Recurring Card Purchase 07/30 Amazon Prime*Mv7Br3I Amzn.Com/Bill WA Card 1733 13.09 | $ | 13.09 |
| | | $ | 672.21 |

# Exhibit "E"

| Who is owed the money | Purpose of Debt | Amount | Due Date |
|---|---|---|---|
| Mirta Garcia | Services Rendered Nov 15-30 | $ 637.50 | 12/8/2019 |
| Mirta Garcia | Services Rendered Nov 15-30 | $ 650.00 | 12/8/2019 |
| T & R Franco Corp | Services Rendered Nov 15-30 | $1,575.00 | 12/8/2019 |

$2,862.50

| Who is owed the money | Purpose of Debt | Amount | Due Date |
|---|---|---|---|
| Mirta Garcia | Services Rendered Dec 1-15 | $ 675.00 | 1/10/2019 |
| Mirta Garcia | Services Rendered Dec 1-15 | $ 750.00 | 1/10/2019 |
| T & R Franco Corp | Services Rendered Dec 1-31 | $2,800.00 | 1/10/2019 |
| Alonso Therapy Services Corp | Services Rendered Dec 1-31 | $2,500.00 | 1/10/2019 |

$6,725.00

Total **$9,587.50**

# Exhibit "F"

# Children First Consultants Inc

### A/R AGING SUMMARY

As of July 31, 2020

|  | CURRENT | 1 - 30 | 31 - 60 | 61 - 90 | 91 AND OVER | TOTAL |
|---|---|---|---|---|---|---|
| AHCA |  |  |  |  | 1,483,279.82 | $1,483,279.82 |
| Wellcare |  |  |  |  | 18,699.46 | $18,699.46 |
| **TOTAL** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$1,501,979.28** | **$1,501,979.28** |



**CHASE** 

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

July 01, 2020 through July 31, 2020

Account Number: ___ J7151

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00123043 DRE 021 210 21420 NNNNNNNNNNN 1 000000000 64 0000
CHILDREN FIRST CONSULTANTS INC
DEBTOR-IN-POSSESSION 19-25286
5246 SW 8TH ST STE 208-D
CORAL GABLES FL 33134-2375

## CHECKING SUMMARY  Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $17,346.72 |
| Deposits and Additions | 1 | 604.13 |
| ATM & Debit Card Withdrawals | 11 | -440.21 |
| Electronic Withdrawals | 1 | -230.00 |
| Fees | 1 | -2.00 |
| Ending Balance | 14 | $17,278.64 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 07/17 | Remote Online Deposit | 1 | $604.13 |
| **Total Deposits and Additions** | | | **$604.13** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | Recurring Card Purchase 06/30 Amazon Prime*MS23C9Y Amzn.Com/Bill WA Card 1733 | $13.09 |
| 07/02 | Card Purchase       07/02 Google  Gsuite_Childre 650-2530000 CA Card 1733 | 18.00 |
| 07/03 | Recurring Card Purchase 07/03 Public Storage 00116 800-567-0759 FL Card 0179 | 76.77 |
| 07/06 | Recurring Card Purchase 07/03 Dropbox*Cttqkdc2Sbgs 888-4468396 De Card 1733 | 75.00 |
| 07/06 | Recurring Card Purchase 07/06 Int*Quickbooks Online 800-446-8848 CA Card 1733 | 70.00 |
| 07/13 | Recurring Card Purchase 07/11 Adobe Acropro Subs 408-536-6000 CA Card 1733 | 24.99 |
| 07/22 | Recurring Card Purchase 07/21 His*Hiscox Inc 888-202-3007 NY Card 1733 | 98.83 |
| 07/27 | Recurring Card Purchase 07/27 J2 *Myfax Services 877-437-3607 CA Card 1733 | 10.00 |
| 07/27 | Recurring Card Purchase 07/25 Google *Google Storag 855-836-3987 CA Card 1733 | 1.99 |
| 07/31 | Card Purchase       07/30 Fedex 395283636269 Memphis TN Card 1733 | 38.45 |
| 07/31 | Recurring Card Purchase 07/30 Amazon Prime*Mv7Br3l Amzn.Com/Bill WA Card 1733 | 13.09 |
| **Total ATM & Debit Card Withdrawals** | | **$440.21** |

## ATM & DEBIT CARD SUMMARY

Oxana Garkavchenko  Card 0179

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $76.77 |



CHASE ◆

| | | |
|---|---|---|
| | Total Card Deposits & Credits | $0.00 |
| **Sofia Aneas Card 1733** | | |
| | Total ATM Withdrawals & Debits | $0.00 |
| | Total Card Purchases | $363.44 |
| | Total Card Deposits & Credits | $0.00 |
| **ATM & Debit Card Totals** | | |
| | Total ATM Withdrawals & Debits | $0.00 |
| | Total Card Purchases | $440.21 |
| | Total Card Deposits & Credits | $0.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/20 | Quickpay With Zelle Payment To Luzmarina Sanz Jpm403338852 | $230.00 |
| **Total Electronic Withdrawals** | | **$230.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/29 | Counter Check | $2.00 |
| **Total Fees** | | **$2.00** |

The monthly service fee of $12.00 was waived this period because you maintained a minimum daily balance of $1,500.00 or more.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 07/01 | $17,333.63 | 07/13 | 17,068.87 | 07/27 | 17,332.18 |
| 07/02 | 17,315.63 | 07/17 | 17,673.00 | 07/29 | 17,330.18 |
| 07/03 | 17,238.86 | 07/20 | 17,443.00 | 07/31 | 17,278.64 |
| 07/06 | 17,093.86 | 07/22 | 17,344.17 | | |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 11 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **11** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $12.00 |
| Service Fee Credit | -$12.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$0.00** |

 CHASE ◆

July 01, 2020 through July 31, 2020

Account Number:                7151

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:**  Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**



---



This Page Intentionally Left Blank

Children First Consultants Inc

**TOTAL BUS CHK (7151), Period Ending 07/31/2020**

**RECONCILIATION REPORT**

Reconciled on: 08/12/2020

Reconciled by: Sofia Aneas

Any changes made to transactions after this date aren't included in this report.

**Summary**                                                                                    USD

Statement beginning balance.................................................................................17,346.72
Checks and payments cleared (13)........................................................................-672.21
Deposits and other credits cleared (1)...................................................................604.13
Statement ending balance.....................................................................................17,278.64

Register balance as of 07/31/2020.......................................................................17,278.64
Cleared transactions after 07/31/2020.....................................................................0.00
Uncleared transactions after 07/31/2020...............................................................-595.09
Register balance as of 08/12/2020.......................................................................16,683.55

**Details**

Checks and payments cleared (13)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|------|------|---------|-------|--------------|
| 07/01/2020 | Expense | | Amazon | -13.09 |
| 07/02/2020 | Expense | | Google | -18.00 |
| 07/03/2020 | Expense | | | -76.77 |
| 07/06/2020 | Expense | | | -75.00 |
| 07/06/2020 | Expense | | | -70.00 |
| 07/13/2020 | Expense | | | -24.99 |
| 07/20/2020 | Expense | | | -230.00 |
| 07/22/2020 | Expense | | | -98.83 |
| 07/27/2020 | Expense | | MyFax | -10.00 |
| 07/27/2020 | Expense | | Google | -1.99 |
| 07/29/2020 | Expense | | | -2.00 |
| 07/31/2020 | Expense | | | -38.45 |
| 07/31/2020 | Expense | | Amazon | -13.09 |

Total                                                                                         -672.21

Deposits and other credits cleared (1)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|------|------|---------|-------|--------------|
| 07/17/2020 | Deposit | 1 | Florida Blue | 604.13 |

Total                                                                                          604.13

**Additional Information**

Uncleared checks and payments after 07/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|------|------|---------|-------|--------------|
| 08/03/2020 | Expense | | | -82.10 |
| 08/03/2020 | Expense | | Google | -18.00 |
| 08/04/2020 | Check | 2348 | Us Trustee | -325.00 |
| 08/04/2020 | Expense | | | -75.00 |
| 08/06/2020 | Expense | | | -70.00 |
| 08/11/2020 | Expense | | | -24.99 |

Total                                                                                         -595.09

# Children First Consultants Inc

## PROFIT AND LOSS

January - July, 2020

| | TOTAL |
|---|---|
| Income | |
|   Sales | 6,162.04 |
| **Total Income** | **$6,162.04** |
| **GROSS PROFIT** | **$6,162.04** |
| Expenses | |
|   Accounting Software Licence | 623.82 |
|   Advertising & Marketing | 263.45 |
|   Bank Charges & Fees | 2.00 |
|   Insurance | 494.19 |
|   Legal & Professional Services | 2,570.00 |
|   Office Supplies | 754.67 |
|   Other Business Expenses | 980.39 |
|   Rent & Lease | 576.77 |
|   Taxes & Licenses | 150.00 |
|   Therapy Licence Software | 486.92 |
|   Therapy Supplies | -44.50 |
|   Utilities | 70.00 |
| **Total Expenses** | **$6,927.71** |
| **NET OPERATING INCOME** | **$ -765.67** |
| **NET INCOME** | **$ -765.67** |

# Children First Consultants Inc

BALANCE SHEET

As of July 31, 2020

| | TOTAL |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Bank Accounts | |
|   TOTAL BUS CHK (7151) | 17,278.64 |
|   **Total Bank Accounts** | **$17,278.64** |
| Accounts Receivable | |
|   Accounts Receivable (A/R) | 1,501,979.28 |
|   **Total Accounts Receivable** | **$1,501,979.28** |
| Other Current Assets | |
|   Uncategorized Asset | 0.00 |
|   **Total Other Current Assets** | **$0.00** |
| **Total Current Assets** | **$1,519,257.92** |
| Other Assets | |
|   Loan to Health First Consultants Inc | 1,510.00 |
| **Total Other Assets** | **$1,510.00** |
| **TOTAL ASSETS** | **$1,520,767.92** |
| **LIABILITIES AND EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
|   Accounts Payable (A/P) | 958,486.41 |
|   **Total Accounts Payable** | **$958,486.41** |
| Other Current Liabilities | |
|   Direct Deposit Payable | 0.00 |
|   Loan from Shareholder | 36,836.00 |
|   Payroll Liabilities | |
|     Federal Taxes (941/944) | 6,711.90 |
|     Federal Unemployment (940) | -370.00 |
|     FL Unemployment Tax | 0.00 |
|     Humana | 0.00 |
|     Salaries Payable | 105,000.00 |
|     **Total Payroll Liabilities** | **111,341.90** |
|   **Total Other Current Liabilities** | **$148,177.90** |
| **Total Current Liabilities** | **$1,106,664.31** |
| **Total Liabilities** | **$1,106,664.31** |
| Equity | |
|   Owners Distribution | -1,005,500.00 |
|   Retained Earnings | 1,425,915.16 |
|   Net Income | -6,311.55 |
| **Total Equity** | **$414,103.61** |
| **TOTAL LIABILITIES AND EQUITY** | **$1,520,767.92** |

**Weeks Projection**

| DRAFT & PRELIMINARY | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Week 14 | Week 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 11-10/11-16 | 11/17-11/23 | 11/24-11/30 | 12/01-12/07 | 12/08-12/14 | 12/15-12/21 | 12/22-12/28 | 12/29-1/04 | 1/05-1/11 | 1/12-1/18 | 1/19-1/25 | 1/26-2/1 | 2/2-2/8 | 2/9 -2/15 | 2/16-2/22 |
| **Cash on Bank** | 14,051.33 | | | | | | | | | | | | | | |
| **Revenues** | | | | | | | | | | | | | | | |
| Welicare | | | $8,753.02 | | $5,616.16 | $5,552.62 | | $6,696.00 | | | | | | | |
| Medicaid | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Total Revenue | $14,051.33 | - | 8,753.02 | - | 8,435.55 | 5,552.62 | - | $6,696.00 | | | | | | - | |
| **Cost of Revenue** | | | | | | | | | | | | | | | |
| Cost of Revenue | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Total Cost of Revenue | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | | | | | $  - | $  - | $  - |
| | | | | | | | | | | | | | | | |
| Gross Revenue | $14,051.33 | $  - | $8,753.02 | $  - | $ 8,435.55 | $ 5,552.62 | $  - | $ 6,696.00 | | | | | $  - | $  - | $  - |
| | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Rent/STORAGE | | | | 500 | | | | 500 | | | | $109.26 | | | |
| Dropbox | | | | $75.00 | | | | $75.00 | | | | $75.00 | | | |
| Adobe | | | | | $25.00 | | | | $25.00 | | | | | | |
| Google | | | | $18.00 | | | | $18.00 | | | | $18.00 | | | |
| Quickbooks | | $30.00 | | $70.00 | | | $30.00 | | $70.00 | | $70.00 | | | | $70.00 |
| Supplies | | | | $80.00 | | | | $80.00 | | | $0.00 | $0.00 | | | |
| Amazon | | | | $14.00 | | | | $14.00 | | | | $14.00 | | | |
| Bank Service Fee | | | $60.00 | | | | $60.00 | | | | $12.00 | | | | $12.00 |
| Fax | | | $40.00 | | | | $40.00 | | | | $10.00 | | | | $10.00 |
| Professional Fees | $3,350.00 | | $6,270.10 | | $2,267.00 | $3,069.70 | | $4,062.50 | | | | $6,725.00 | | | |
| Google Storage | | | | | | | | | | | | | | | |
| Hiscox Insurance | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Total Operating Expenses | $ 3,350.00 | $ 30.00 | $ 6,370.10 | $ (757.00) | $ 2,292.00 | $ 3,069.70 | $ 130.00 | $ 4,749.50 | $ 95.00 | $  - | $ 92.00 | $6,941.26 | $0.00 | $0.00 | $92.00 |
| | | | | | | | | | | | | | | | |
| Weekly Cash Flow | $10,701.33 | $ (30.00) | $2,382.92 | $ (757.00) | $ 6,143.55 | $ 2,482.92 | $ (130.00) | $ 1,946.50 | $ (95.00) | $  - | $ (92.00) | $ (6,941.26) | $  - | $  - | $ (92.00) |
| | | | | | | | | | | | | | | | |
| **Cash on Hand** | | | | | | | | | | | | | | | |
| Operating Balance | $  - | $10,701.33 | 8,753.02 | 8,753.02 | $12,297.25 | $18,440.80 | $20,923.72 | $20,793.72 | $22,740.22 | $22,645.22 | $22,645.22 | $22,553.22 | $15,611.96 | $15,611.96 | $15,611.96 |
| Cash Receipts + | 14,051.33 | - | 8,753.02 | - | 8,435.55 | 5,552.62 | - | 6,696.00 | - | - | - | - | - | - | - |
| Cash Disbursements - | (3,350.00) | (30.00) | (6,370.10) | (757.00) | (2,292.00) | (3,069.70) | (130.00) | (4,749.50) | (95.00) | - | (92.00) | (6,941.26) | - | - | (92.00) |
| Total =New Cash Balance | $10,701.33 | $10,671.33 | $12,297.25 | $12,297.25 | $18,440.80 | $20,923.72 | $20,793.72 | $22,740.22 | $22,645.22 | $22,645.22 | $22,553.22 | $15,611.96 | $15,611.96 | $15,611.96 | $15,519.96 |

# Weeks Projection

| DRAFT & PRELIMINARY | Week 16 | Week 17 | Week 18 | Week 19 | Week 20 | Week 21 | Week 22 | Wek 23 | Week 24 | Week 25 | Week 26 | Week 27 | Week 28 | Week 29 | Week 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2/23-2/29 | 3/1-3/7 | 3/8-3/14 | 3/15-3/21 | 3/22-3/28 | 3/29-4/4 | 4/5-4/11 | 4/12-4/18 | 4/19-4/25 | 4/26-5/2 | 5/3-5/9 | 5/10-5/16 | 5/17-5/23 | 5/24-5/30 | 5/31-6/6 |
| **Cash on Bank** | | | | | | | | | | | | | | | |
| **Revenues** | | | | | | | | | | | | | | | |
| Welcare | $ - | | | | - | $ - | $ - | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Medicaid | | | | | | | | | | | | | | | |
| | - | - | - | - | - | - | | - | - | - | - | - | - | - | - |
| **Total Revenue** | | | | | | | | | | | | | | | |
| **Cost of Revenue** | | | | | | | | | | | | | | | |
| Cost of Revenue | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| **Total Cost of Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | | |
| **Gross Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Rent/STORAGE | | $76.77 | | | | $76.77 | | | | $76.77 | | | | | |
| Dropbox | | $75.00 | | | | $75.00 | | | | $75.00 | | | | | |
| Adobe | | | | $24.99 | | | | | $24.99 | | | | | | $24.99 |
| Google | | $18.00 | | | | $18.00 | | | | $18.00 | | | | | |
| Quickbooks | | | | | $70.00 | | | | $70.00 | | | | | | $70.00 |
| Supplies | | $0.00 | | | | $0.00 | | | | $0.00 | | | | | |
| Amazon | | $13.09 | | | | $13.09 | | | | $13.09 | | | | | |
| Bank Service Fee | | | | | $12.00 | | | | $12.00 | | | | | | $12.00 |
| Fax | | | | | $10.00 | | | | $10.00 | | | | | | $10.00 |
| Professional Fees | | | | | | | | | | | | | | | |
| Google Storage | | | | | $1.99 | | | | $1.99 | | | | | | $1.99 |
| Hiscox Insurance | | | | | | | | | $98.83 | | | | | | |
| | | | | | | | | | | | | | | | |
| **Total Operating Expenses** | $ - | $182.86 | $0.00 | $24.99 | $93.99 | $182.86 | $0.00 | $0.00 | $217.81 | $182.86 | $0.00 | $0.00 | $0.00 | $0.00 | $118.98 |
| | - | | - | | | | - | - | | | | - | - | - | |
| **Weekly Cash Flow** | $ - | $ (182.86) | $ - | $ (24.99) | $ (93.99) | $ (182.86) | $ - | $ - | $ (217.81) | $ (182.86) | $ - | $ - | $ - | $ - | $ (118.98) |
| | | | | | | | | | | | | | | | |
| **Cash on Hand** | | | | | | | | | | | | | | | |
| Operating Balance | $15,519.96 | $15,519.96 | $15,337.10 | $15,337.10 | $15,312.11 | $15,218.12 | $15,035.26 | $15,035.26 | $15,035.26 | $14,817.45 | $14,634.59 | $14,634.59 | $14,634.59 | $14,634.59 | $14,634.59 |
| Cash Receipts + | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cash Disbursements - | - | (182.86) | - | (24.99) | (93.99) | (182.86) | - | - | (217.81) | (182.86) | - | - | - | - | (118.98) |
| Total =New Cash Balance | $15,519.96 | $15,337.10 | $15,337.10 | $15,312.11 | $15,218.12 | $15,035.26 | $15,035.26 | $15,035.26 | $14,817.45 | $14,634.59 | $14,634.59 | $14,634.59 | $14,634.59 | $14,634.59 | $14,515.61 |

# Weeks Projection

| DRAFT & PRELIMINARY | Week 31 6/7-6/13 | Week 32 6/14-6/20 | Week 33 6/21-627 | Week34 6/27-7/4 | Week 34 7/5-7/11 | Week 35 7/12-7/18 | Week 36 7/19-7/25 | Week 37 7/26-8/1 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Cash on Bank** | | | | | | | | | |
| **Revenues** | | | | | | | | | |
| Wellcare | $ - | $ - | $ - | $ - | $ - | $ 604.13 | $ - | $ - | $27,221.93 |
| Medicaid | | | | | | | | | $ - |
| **Total Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $43,488.52 |
| **Cost of Revenue** | | | | | | | | | |
| Cost of Revenue | | | | | | | | | 0 |
| **Total Cost of Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Gross Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $43,488.52 |
| | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | |
| Rent/STORAGE | $76.77 | | | $76.77 | | | | $76.77 | $1,569.88 |
| Dropbox | $75.00 | | | $75.00 | | | | $75.00 | $675.00 |
| Adobe | | | $24.99 | | | | $24.99 | | $174.95 |
| Google | $18.00 | | | $18.00 | | | | $18.00 | $162.00 |
| Quickbooks | | | $70.00 | | | | $70.00 | | $690.00 |
| Supplies | $0.00 | | $0.00 | | | | $0.00 | | $160.00 |
| Amazon | $13.09 | | | $13.09 | | | | $13.09 | $120.54 |
| Bank Service Fee | | | $12.00 | | | | $12.00 | | $204.00 |
| Fax | | | $10.00 | | | | $10.00 | | $0.00 |
| Professional Fees | | | | | | | | | $25,744.30 |
| Google Storage | | | $1.99 | | | | $1.99 | | $9.95 |
| Hiscox Insurance | | | $98.83 | | | | $98.83 | | $286.49 |
| | | | | | | | | | $ - |
| | | | | | | | | | $ - |
| | | | | | | | | | $ - |
| | | | | | | | | | $ - |
| | | | | | | | | | $ - |
| **Total Operating Expenses** | $182.86 | $0.00 | $217.81 | $182.86 | $0.00 | $0.00 | $217.81 | $182.86 | $29,957.11 |
| | | | | | | | | | |
| **Weekly Cash Flow** | $ (182.86) | $ - | $ (217.81) | $ (182.86) | $ - | $ - | $ (217.81) | $ (182.86) | $15,611.96 |
| | | | | | | | | | |
| **Cash on Hand** | | | | | | | | | |
| Operating Balance | $14,515.61 | $14,332.75 | $14,332.75 | $14,114.94 | $13,932.08 | $13,932.08 | $13,932.08 | $13,714.27 | |
| Cash Receipts + | | | | | | - | | | |
| Cash Disbursements - | (182.86) | | (217.81) | (182.86) | | | (217.81) | (182.86) | |
| Total =New Cash Balance | $14,332.75 | $14,332.75 | $14,114.94 | $13,932.08 | $13,932.08 | $13,932.08 | $13,714.27 | $13,531.41 | |